OF THE

## STATE OF ARIZONA

From December 22, 1923, to October 6, 1924.

[Civil No. 2071. Filed December 22, 1923.]

[221 Pac. 222.]

# W. T. ARMSTRONG and W. M. SCOTT, Appellants, v. WILLIAM IRWIN and ANNA IRWIN, Appellees.

1. VENDOR AND PURCHASER — GENERALLY ON PURCHASER'S DEFAULT VENDOR NOT BOUND TO TERMINATE CONTRACT.—Generally, a contract provision that in default on any installment the agreement shall be void, and purchaser's rights thereunder forfeited, is for the exclusive benefit of vendor, and he is not bound to terminate.

2. VENDOR AND PURCHASER — PURCHASER CANNOT PROFIT BY OWN DEFAULT.—A purchaser in a land sale contract cannot profit by his own default unless the parties have provided what the result of default shall be.

3. DAMAGES — PARTIES TO LAND SALE CONTRACT MAY PROVIDE DAMAGES FOR BREACH BY EITHER.—Parties to a land sale contract may provide what the damages shall be for breach by either.

4. VENDOR AND PURCHASER — PURCHASER'S DEFAULT OF INSTALLMENT FORFEITED AMOUNTS PAID.—In a land sale contract, in which time was the essence, which provided that, if purchaser defaulted in payment of installment, he lost all rights, and vendor should not be obligated to convey, and purchaser forfeited all moneys

---

4. Applicability of provision for stipulated damages or penalty for delay in completion of a contract where the entire contract is abandoned or repudiated, see notes in 20 **L. R. A.** (**N. S.**) 350; L. R. A. 1916E, 1179.

See 17 **C. J.** 931, 932, 948; 39 **Cyc.** 1386, 1392, 1605, 1606, 1608, 1902.

paid as liquidated damages and compensation for use and occupation of the land, on purchaser's default he forfeited amounts paid as damages and rent which vendor retained as full compensation therefor; hence vendor did not have the election to recover installments due.

5. DAMAGES—SUMS PAID IN PART PERFORMANCE, ON BREACH, GENERALLY TREATED AS "LIQUIDATED DAMAGES."—It is generally held that money paid in part performance of a contract providing for forfeiture on default is to be treated as liquidated damages, and not as a penalty; "liquidated damages" signifying the amount which the parties agreed when the contract was entered into should be paid in case of breach.

6. DAMAGES — PROVISION FOR RETENTION BY VENDORS OF INSTALLMENT PAID FOR USE OF PREMISES INDICATED RELATION OF LANDLORD AND TENANT ON DEFAULT.—Where a land sale contract provided that, on default of installment by purchaser, vendors could retain the amount paid to compensate them for use of premises for rent, it indicated that the relation of landlord and tenant should arise.

7. VENDOR AND PURCHASER — LAND SALE CONTRACT REGARDED BY PARTIES AS OPTION OR LEASE.—Where land sale contract provided that, on purchaser's default, vendors could retain installments paid as liquidated damages and compensation for use and occupation, in view of provisions that purchaser should receive a deed when one-half purchase price was paid, but till that time he should cultivate the land properly, leads to conclusion that they regarded it more in nature of option or lease than binding contract for sale, as respects vendor's right to recover balance of installments upon default.

8. VENDOR AND PURCHASER — FILING COMPLAINT HELD SUFFICIENT NOTICE OF DEFAULT.—Where land sale contract provided that, in default of payment of installments, purchaser would forfeit rights thereunder, filing complaint by vendor alleging default and service of summons, to which was attached a copy of the complaint, was sufficient notice of default.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Reversed.

Messrs. Alexander & Christy, for Appellants.

Messrs. Dougherty & Dougherty and Mr. G. A. Rodgers, for Appellees.

McALISTER, C. J.—On September 25, 1919, William Irwin and Anna Irwin, as parties of the first part, and W. T. Armstrong and W. M. Scott, as parties of the second part, entered into a written contract by which the former agreed to sell and the latter to buy, under the conditions therein expressed, a quarter-section of land situated in Maricopa county, Arizona, for a consideration of $59,100, to be paid as follows: $6,500 on January 1, 1920, which was evidenced by a promissory note, and $5,000 on or before the first day of each January thereafter until January 1, 1930, when the final payment of $7,600 would become due; all deferred installments to bear interest at the rate of seven per cent, payable semi-annually. The complaint which was filed May 17, 1921, alleges that the $5,000 due January 1, 1921, together with the interest upon all deferred payments from September 25, 1919, is unpaid, and prays judgment therefor.

Attached to the complaint is a copy of the contract, which by proper allegation is made a part thereof, and under it the purchasers were given possession of the land on October 1, 1919, and upon payment of one-half of the purchase price, together with the interest due on all deferred payments up to that time, the vendors were required to execute and deliver to them a warranty deed conveying the premises, and at the same time and as a part of the same transaction the latter, with their wives, were obligated to execute and deliver to the vendors a realty mortgage on said premises to secure the payment of the balance of the purchase price which it provides should be evidenced by the promissory notes of the vendees to be payable at the times and bear the interest provided for under the contract, and until such time as the vendees receive such deed they were required to farm the land in a thorough and proper manner and in accordance with the rules

of good husbandry. Time was made the essence of the agreement, which further provides that—

"In the event that the second parties shall default in the payment of any sum of principal or interest at the times herein mentioned, and such default shall continue for a period of fifteen days after written notice thereof, then and in that event the second parties shall lose all rights under this contract and the first parties shall not be obligated either in law or equity to convey said premises to the second parties and the second parties shall forfeit to the first parties all moneys that shall have been paid on account of this contract as liquidated damages and as compensation for the use and occupation of said premises."

The defendants demurred to the complaint, and, their demurrer being overruled, answered October 14th, alleging, among other things, a verbal modification of the contract both as to the amount and time of payment of the various installments, and a readiness and willingness on their part at all times since January, 1921, to carry out and perform the terms and conditions thereunder.

On November 9th following plaintiffs filed what they denominated an "acceptance of tender and demand of performance," in which they accepted defendants' offer to perform, and moved the court for an order requiring them to execute the contract in its modified form, and pay to plaintiffs the sums due thereunder, and, in event of their failure to do so, that plaintiffs be given judgment for $5,458.20, the amount due under its terms, and the clerk directed to execute the modification of the contract in behalf of defendants. At the same time they filed, to be executed by defendants, what they designated an "agreement tender," containing, as they saw it, the modifications alleged by defendants, and on November 15th another paper of practically the same import, designated an "agreement of sale tender," executed by them the previous day, was filed for the same

purpose. .Defendants, however, did not make the payment demanded nor execute the modified agreement, so on December 17th following the court granted plaintiffs' motion, and gave defendants until the 21st of the same month to comply with it; but the day before this period expired the defendants filed a motion to set aside and vacate this order, giving several reasons therefor, among them being the alleged fact that the plaintiffs tendered and offered for execution by them a modification of the agreement different from that really entered into, and the further fact that the answer admits to be due only $1,000, with interest from February 28, 1921, whereas the order of the court contemplates entering judgment against the defendants for other and further sums not due under the modified agreement at the times of the filing of plaintiffs' complaint or the defendants' answer without any supplemental pleading by plaintiffs to include them. This motion was granted February 7, 1922, whereupon plaintiff's original motion for judgment on the pleadings made November 9, 1921, was allowed to the extent of $1,000, and it is from this judgment the defendants appeal.

A jury was impaneled to try the case November 4, 1921, but before any testimony was introduced the trial order was vacated upon motion of appellees, who say in their brief that this action was taken upon the statement of appellants in open court that they would make good their offer to execute the modified agreement and pay the amount due thereunder. The order in favor of appellees is designated by appellants as a judgment on the pleadings, though the former say it is more in the nature of a judgment upon admissions and tender, and is therefore a judgment by agreement between the parties upon a settlement or compromise.

Only two errors are assigned: The first, the overruling of the demurrer; and the second, the render-

ing of judgment for $1,000 upon the pleadings. The demurrer is based upon the ground that it appears upon the face of the complaint that the plaintiffs are seeking to recover from the defendants a deferred installment of $5,000 which became due under the contract on January 1, 1921, as part of the purchase price, together with the interest on all deferred payments from September 25, 1919, when the contract itself, as disclosed in the provision quoted above, measures and limits their right of recovery upon default of the purchasers to a forfeiture of the amount paid as liquidated damages and as compensation for the use and occupation of the premises. The sum of $6,500 due January 1, 1920, it appears, was paid, and the written notice of default relied on by defendants given May 17, 1921. This was the filing of the complaint and the service of summons, both of which happened more than fifteen days previous to the interposing of the demurrer on June 4th.

May the vendors recover under this contract a past-due installment of principal or interest? According to its provisions, appellants in effect contend, they agreed to sell and the vendees to buy "at the price and under the terms and conditions" stated therein, and one of these conditions is that, in the event the vendees "default in the payment of any sums of principal or interest at the times herein mentioned, and such default continues for a period of fifteen days after written notice thereof," the vendees shall lose all rights thereunder and forfeit to the vendors all amounts paid on account thereof as liquidated damages and as compensation for the use and occupation of the premises, and the vendors shall be released from the obligation to convey and permitted to retain what the vendees have paid and forfeited for the specific purpose of compensating them for the use of their property while in possession of the vendees and for any damages they may have suffered on ac-

count of the failure of the latter to continue the payments. Appellees insist, upon the other hand, that this provision was placed in the contract for the sole benefit of the vendors, and that, in consequence of this fact, they have the right, in case of default in the payment of any installment of principal or interest to elect whether they will waive the conditions of forfeiture, treat the contract as still binding, and insist upon performance, or declare it forfeited, retain what has been paid on the purchase price, and retake possession of the property. In overruling the demurrer the trial court evidently took this view; and it is true that—

"In the common case where the contract provides that, in case of default in the payment of any installment, the agreement shall be null and void, and the rights of the purchaser thereunder shall be forfeited, this provision is held to be for the exclusive benefit of the vendor, and he is not bound to terminate the contract on the vendee's default." 1 Black on Rescission and Cancellation, p. 567.

Counsel for appellees have cited a number of cases to this effect, among them being the following: *Wilcoxson* v. *Stitt,* 65 Cal. 596, 52 Am. Rep. 310, 4 Pac. 629; *North Stockton Town Lot Co.* v. *Fischer,* 138 Cal. 100, 70 Pac. 1082, 71 Pac. 438; *Westervelt* v. *Huiskamp,* 101 Iowa, 196, 70 N. W. 125; *Stewart* v. *Griffith,* 217 U. S. 323, 19 Ann. Cas. 639, 54 L. Ed. 782, 30 Sup. Ct. Rep. 528 (see, also, Rose's U. S. Notes); *Maffet* v. *Oregon & C. R. Co.,* 46 Or. 443, 80 Pac. 489; *Chambers et al.* v. *Anderson,* 51 Kan. 385, 32 Pac. 1098; *New Richmond Land Co.* v. *Ivanovich,* 52 Cal. App. 222, 198 Pac. 221; *Fouts* v. *Foudray,* 31 Okl. 221, Ann. Cas. 1913E, 301, 38 L. R. A. (N. S.) 251, 120 Pac. 960; *Meagher* v. *Hoyle,* 173 Mass. 577, 54 N. E. 347; *Cullen* v. *Park Club Land Co.,* 67 Colo. 210, 184 Pac. 303.

The first case cited, *Wilcoxson* v. *Stitt,* is a leading authority on the subject, and chiefly relied on by appellees. It deals with a contract under which the vendee, having paid one-half of the purchase price of a tract of land, agreed to pay the balance on or before a certain date, but contained this clause:

"In the event of failure to comply with the terms and all the conditions hereof by the party of the second part, the party of the first part shall be released from all obligations, either in law or equity, to convey said property or any part thereof, and the said party of the second part shall forfeit all right thereto, and this agreement shall be void."

After discussing some authorities on the question the court stated its conclusions in this language:

"In the light of these cases, and we find none to the contrary, we feel constrained to hold that the meaning of the clause under discussion in the agreement in this case, is that such agreement is void only at the election of the plaintiff, who can avoid it or enforce it at his option."

In the next case cited, *North Stockton Town Lot Co.* v. *Fischer,* the contract of sale was one providing for the payment of two lots in monthly installments and containing the stipulation that—

"Should any payment become due and remain unpaid for thirty days, then the whole of the balance should immediately become due and payable at the option of plaintiff, and the amounts already paid should be forfeited to plaintiff."

And the court held that—

This "forfeiture clause was for the exclusive privilege of the vendor, to be exercised or not at its option."

In the third case, *Westervelt* v. *Huiskamp* the provisions of the agreement involved appear in the statement of the syllabus that—

"A contract for the sale of land on deferred payments, by the terms of which time is made an essential ingredient, and which provides that, on default in any payment, the contract, so far as it binds the vendor, shall be void, and all payments made shall be forfeited, does not leave performance optional with the purchaser; but, on default, the vendor may elect to insist upon the forfeiture, or to waive it and enforce the contract."

In reaching its conclusion the court states, among other things, that the contract provides that—

The vendee's failure "to perform his part of the agreement should, 'so far as it may bind' the vendor, become null and void; thus indicating that the right to enforce a forfeiture was given to the vendor, and not to the vendee."

It will be observed that in the contracts out of which these cases grew there is either a general clause rendering the contract null and void, and forfeiting all rights of the purchaser, or one specifically making forfeiture optional with the vendor, or one rendering such a clause null and void so far as it "may bind" the vendor, upon default in the payment of any installment called for thereby. These are typical of the others. They are all based upon the proposition that the forfeiture clause in a contract for the sale of real estate is inserted for the benefit of the vendor. The vendee, it is said, cannot profit by his own default; and this is undoubtedly correct unless the parties themselves have provided what the result of a default shall be. In this character of contract, as well as in all others, the intention of the parties is to be ascertained and given effect, for it has never been held that the parties to an agreement for the sale of real estate may not provide what the measure of damages shall be in case of a breach thereof by either side. *Rose* v. *Garn*, 56 Utah, 533, 191 Pac. 645.

In none of the cases cited by appellee does the contract upon which the action is based contain a pro-

vision that, upon default in the payment of an installment of principal or interest, the vendee shall forfeit to the vendor ''all moneys that shall have been paid on account of this contract as liquidated damages and as compensation for the use and occupation of said premises.'' Under this provision the question to be determined is not one of rescission, but whether the parties themselves have not definitely provided that failure to pay an installment due thereunder shall terminate the contract, and leave the parties as they were at that time, the vendors with title to the land and the amount paid thereon, and the vendees with what they had grown upon the premises and rightly taken therefrom during its occupancy. As we view it, this provision clearly and definitely fixes the rights of the parties under the contract in case of default in the payment of an installment of principal or interest, and no alternative is open to either side; and to hold that the vendors, in such event, may elect to recover the installments due, and thus compel specific performance, or retain the amount paid and the land as well, is to fail to give effect to it. Interpreted fairly, and in the light of the entire agreement, this provision can only mean that, in case the vendees fail to make the payments in accordance with the terms of the contract, they will forfeit what they have paid up to that time as damages and rent, and the vendors will retain this sum as full compensation therefor. This view is strengthened by the use of the term ''liquidated damages'' to designate one of the purposes for which the amount paid on the purchase price may be retained by the vendors in case the vendees default, because this term signifies the damages, the amount of which the parties stipulated and agreed, when the contract was entered into, should be paid in case of a breach. Bouvier's Law Dictionary. And it is generally held that a sum of money paid in part per-

formance of a contract providing for forfeiture upon default is to be treated as liquidated damages, that is, as a substitute for performance, and not as a penalty or merely a security for performance.

"A payment by one of two contracting parties to the other, stated to be in part payment of the purchase price or consideration of the transaction, with the provision that it shall be retained by the party to whom it is paid on default of the other to complete the contract, is ordinarily regarded as a liquidation of damages." 17 C. J. 948; *Rose* v. *Garn, supra, Jones* v. *Mississippi Farms Co.,* 116 Miss. 295, 76 South. 880; *Allison* v. *Dunwody,* 100 Ga. 51, 28 S. E. 651; *Hedrick* v. *Firke,* 169 Mich. 549, 135 N. W. 319.

This is especially true where the damages agreed on are reasonable and not disproportionate to actual damages, and under the contract in this case the payments forfeited are to be made in such sums and at such times as would appear properly to compensate the vendors for any loss a default might entail and at the same time not be unfair to the vendees. The payments on the principal and one semi-annual installment of interest are to be made the 1st of January, very much in the nature of rent in advance, when the vendors, in case of default, can protect themselves by retaking possession in time for the year's crop, and the vendees have been at but little if any expense for that season.

The other purpose for which the vendors may retain the amount paid—to compensate them for the use of the premises; that is, for rent—indicates that, in case of default, it was the intention that a relation in the nature of landlord and tenant should arise. Such, in effect, is the holding of the Supreme Court of Utah in a case involving a contract for the sale of land on which $500 was paid when the agreement was executed, the remainder to be paid in installments, but containing this stipulation:

"In case of default in payment of above payments, said deed to be returned to J. Y. Rich, and previous payments shall be used as rent on said premises. Charles E. Foxley shall pay all taxes and assessments that may be levied against said premises after October 1, 1903, and may pay all or any part of said amounts specified above at any time, whether due or not, and stop interest thereon, and shall be entitled to the possession of said premises on and after the 1st day of October, A. D. 1903."

The purchaser defaulted, and because of some disagreement as to the second payment abandoned the premises, and sought to recover the original payment, but failed; the Supreme Court of Utah, in *Foxley v. Rich*, 35 Utah, 162, 99 Pac. 666, holding in the following language that the agreement that it be retained as rent in case of a breach furnished the measure of damages, and the courts could impose no other consequences:

"As we have seen, so far as respondent was concerned, his payments were to be applied as rent for the use, or the right to the use, of the property, while, so far as Rich was concerned, he could then apply the payment to that purpose, and receive back the deed he had placed in escrow with the bank for the benefit of respondent. The parties, therefore, agreed upon what should result in case respondent failed to make the payments, namely, to apply the money as rent, and the return of the deed to Mr. Rich. It, therefore, could not have been contemplated that either party should resort to the courts to compel the other to carry out the other provisions of the contract. . . . Where the parties themselves stipulate what the result of a breach of a particular contract shall be, the courts ordinarily have no authority to impose other consequences than those agreed upon."

Considering the two purposes for which the vendors are permitted to retain the payments made in connection with those provisions stating that the purchaser shall receive a deed to the property and secure the unpaid installments by mortgaging the same only

after they have paid one-half of the purchase price, and that during this time they shall cultivate the land in a thorough and proper manner, and in accordance with the rules of good husbandry, leads to the conclusion that the parties regarded the agreement more in the nature of an option or lease than a binding contract for the sale of real estate. A stipulation that "the grantee further agrees to plow during the fall of 1918 what is known as the lower field as far as the weather conditions will permit," which appeared in a contract similar to the one at bar, brought this very appropriate comment from the Supreme Court of Utah in *Rose* v. *Garn, supra:*

"In the light of human affairs generally, and particularly in the dealings of men in the ordinary business transactions of life, it would be extremely difficult to conceive of the vendor of real property directing the purchaser as to when, or what use or disposition is to be made of it, more especially in the way of plowing it for crops. We do not think this provision of the contract would have been written had the parties contemplated that an absolute purchase and sale of the property was being made by the transaction between them. Nor do we think it may now be contended with any degree of consistency that this provision was made for the benefit of the plaintiff unless it be implied that upon failure of the defendant to meet the installments the bank was to return to plaintiff the instruments of transfer undelivered and thereupon no further liabilities on the part of either party should continue."

The filing of the complaint, alleging that the vendees had defaulted, and the service of summons, to which was attached a copy of this complaint, were, under the contract, sufficient notice of default, inasmuch as no particular form of default other than that it be written was required. Their action was based upon a default, but the contract did not confer upon appellees the right to elect their remedy in that instance, and therefore furnished no basis for

the suit; hence the filing and service of these papers could have served no other end. If appellees had been given the right to elect between specific performance and forfeiture, their contention that, since the purpose of the action is to enforce the contract, instead of to forfeit it, the notice contained in the complaint was not that contemplated by the contract, would prevail. But without the right of election the notice provided for is immaterial so far as appellees are concerned unless the vendees shall default and refuse possession, in which case it might be necessary as a condition precedent to the right to regain the premises.

Our conclusion is that the court should have sustained the demurrer. This renders a discussion of the questions raised by the other assignment unnecessary.

The judgment is reversed and the case remanded, with directions that the demurrer be sustained.

ROSS and LYMAN, JJ., concur.