[Civil No. 4187. Filed September 23, 1940.]

[105 Pac. (2d) 520.]

R. G. HARGRAVE, Appellant, v. DWIGHT B. HEARD INVESTMENT COMPANY, a Corporation, and SOUTHWESTERN FIRE INSURANCE COMPANY, a Corporation, Appellees.

Mr. Marshall W. Haislip, for Appellant.

Mr. Orme Lewis, for Appellee Dwight B. Heard Investment Company.

Messrs. Armstrong, Kramer, Morrison, Roche & Duffy, for Appellee Southwestern Fire Insurance Company.

LOCKWOOD, J.—This is an action by Phoenix Title and Trust Company, hereinafter called plaintiff, interpleading R. G. Hargrave, hereinafter called defendant, Dwight B. Heard Investment Company, a corporation, hereinafter called the investment company, and Southwestern Fire Insurance Company, a corporation, hereinafter called the insurance company.

The plaintiff sets up in its complaint that it has the sum of $1,200; that the defendant, insurance company and investment company have each made conflicting claims upon plaintiff for the amount, and that plaintiff, therefore, interpleads the other parties and

tenders the sum of $1,200 into court so that the respective rights thereto may be determined. The parties filed their claims to the $1,200; the matter was heard before the court sitting without a jury, and judgment was rendered in favor of the insurance company for the sum of $1,200, subject to the right of the investment company to one-half thereof, whereupon defendant appealed.

The material facts are as follows: Defendant had for many years engaged in the abstract and title insurance business in other parts of the country. He came to Phoenix, and while here examined certain lands owned by the insurance company, with a view of purchasing the same for subdivision. As a result thereof, on December 1, 1937, defendant, together with P. V. Fuller, a salesman for the investment company, went to plaintiff and submitted to it, to be held in escrow, a purchase and sale contract on the form used by the Phoenix Real Estate Board. This contract, when presented, was signed by defendant as purchaser, and the investment company as agent for the seller, and was accompanied with a check for $1,200 signed by defendant. Plaintiff refused to accept either the check or the contract unless and until the owner of the property, the insurance company, signed the contract. Thereupon Fuller contacted the president of the insurance company, and on December 2d the latter, having been duly authorized by its board of directors, signed for the insurance company as the seller of the property, and Fuller presented the contract and check to plaintiff, which accepted them and cashed the check. The latter then drew up an escrow agreement in accordance with the conditions which appeared in the contract, but added to it, at the suggestion of the insurance company, three provisions in regard to the care of certain fruit trees upon the property until January 1, 1938. The escrow agreement was then

taken by Fuller to defendant, who objected to the insertion of the provision in regard to the care of the trees and refused to sign it then, but stated "I will study it over." The insurance company continued to care for the trees and nothing further was done until December 28th, when defendant repudiated the contract and asked for a return of the $1,200, on the ground that the escrow agreement offered to him was different from the conditions in the contract of sale. The insurance company and the investment company refused to return the money or grant a release from the contract, and nothing further having been paid thereon by defendant, this suit was commenced.

There are some four assignments of error, which raise only one question of law, and that is whether the instrument herein referred to as a contract of sale and purchase was a completed contract, or whether it was merely an offer made by defendant to enter into a contract, which had been rejected by the insurance company and a counteroffer made by it, which was not accepted by defendant.

■■ It is the law that when A offers B to enter into a contract on certain terms, and B declines to accept those terms but offers a counterproposition, the original offer loses its effect, and is thereafter only open to acceptance by B when renewed by A. On the other hand, if A makes an offer which is unconditionally accepted by B, the fact that B, after such acceptance, proposes a modification of the original contract, which is declined by A, does not affect the validity of the original contract. If then, in the present case the original contract of purchase and sale, upon its delivery to and acceptance by plaintiff, was a completed and binding contract between defendant and the insurance company, the fact that the latter desired to have certain terms added to those of the contract in the escrow directions to plaintiff does not affect the

validity of the contract. If, on the other hand, it were necessary to have the written escrow agreement accepted by defendant and the insurance company before the contract became complete, there never was any contract entered into and defendant would be entitled to a return of the money.

██ It would be of no particular value as a precedent and would extend this opinion to undue length to set forth the written contract *in haec verba*. We think it sufficient to say that on its face it shows a complete, unambiguous and binding contract of purchase as soon as executed by the parties, with a proviso therein that in case the purchaser failed to complete the payments, any money paid should be retained by the seller as liquidated damages. While it is customary, under similar circumstances, that formal written escrow agreements be executed by buyer and seller and given the escrow holder, this is not necessary to complete the contract. The acceptance by plaintiff of the signed contract and the initial payment by defendant bound the parties.

It is not disputed that defendant declined to make further payments in accordance with the contract. The trial court, therefore, properly rendered judgment against him. And it is not disputed by any of the parties that if defendant was not entitled to a return of the money, it was properly divided between the investment company and the insurance company.

The judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.