308 P.2d 693

Donald H. TENNENT and Eleanor J. Tennent, husband and wife, Appellants,

v.

Steve LEARY, d/b/a Steve Leary Co., James Kesicki and Wanda Kesicki, husband and wife, Appellees.

No. 6229.

Supreme Court of Arizona.

March 26, 1957.

Arthur Goldbaum and Jo Ann D. Diamos, Tucson, for appellants.

John W. Ross and Paul J. Cella, Tucson, for appellees.

PHELPS, Justice.

This is an action to recover the sum of $1,500 earnest money paid to Leary by plaintiff Tennent in a real estate transaction wherein Tennent and his wife submitted to Leary, a real estate broker, a written offer to purchase a residence listed for sale with him by one James C. Kesicki. Both Kesicki and Leary were made party-defendants. The court entered judgment for defendants from which plaintiff appeals. The parties will be hereinafter designated by their last names.

The evidence does not disclose the sale price for which the property was listed with

Leary but the testimony of Kesicki justifies the inference that it was listed at $17,500. Tennent's offer, which was made in writing, was for the sum of $17,000, upon the condition that Kesicki, at his expense, would install a new 5,000 C.F.M. cooler with water pump and run a gas line ready for meter hook-up. This offer was executed on November 17, 1953 following a visit by Tennent and wife to the premises involved on November 15 or 16, at which Leary was holding an open-house for the purpose of contacting prospective purchasers.

Mrs. Cameron, a licensed real estate agent, working for Leary, met the Tennents while they were visiting the premises involved. On November 17, at about 11 o'clock at night, the Tennents executed the written offer here involved and delivered it to Leary, together with their check for $1500 as earnest money.

On the next morning, November 18, Mrs. Cameron presented the offer to Mr. Kesicki for acceptance and he endorsed on the back thereof the following:

"November 18, 1954

"We agree to the sale of the above-described property at the above terms except for the following: We will install a new cooler of not less than 5000 C.F.M. and water cooler at purchasers' expense. Purchaser to pay for cooler at cost price to builder $170.00 approximately."

Thereafter on the same day Tennent was informed by a message sent to his home by Mrs. Cameron that his presence was desired at Leary's office concerning developments relative to his offer to purchase the Kesicki property.

He went to the office at 2:00 or 3:00 o'clock p. m. on the 18th. He was then informed by Mrs. Cameron that Mr. Kesicki had rejected his offer and had made a counter-offer as above set forth. After discussing the matter for a few minutes they then went into Leary's office, where, among other things, the following respective statements were made:

Mrs. Cameron testified that:

"Mr. Leary told Capt. Tennent that I (Mrs. Cameron) would go back as soon as Capt. Tennent— * * * I would go back to Mr. Kesicki and I would keep on working and trying to get the house for him since he wanted it, at his own terms, and that means including a cooler."

She stated that as Capt. Tennent was leaving the office he picked up all four copies of his written offer of purchase and,

"* * * said he would show all of the papers to the lawyer, and that he would get in touch with us in an hour."

"Yes, Mr. Leary said (to Tennent) it was all right for Capt. Tennent to take all of the copies of the offer, and I

(Mrs. Cameron) said that if I were going to go back to Mr. Kesicki and get his signature I would need the original copy, So I took the original copy out of the batch and handed them back, handed the papers back to Capt. Tennent.";

Mr. Leary told Capt. Tennent his lawyer would find nothing wrong with the papers;

"Q. Capt. Tennent heard you state that you were going back to see Mr. Kesicki, did he? A. Yes, he did.

"Q. He was present at the time? A. He was present.

"Q. Did he object or tell you not to go back to Mr. Kesicki? A. He never said not to go back".

She also testified that he never told her to go back. In other words, he never said to go back to Kesicki and he never told her not to go back although he knew she was going to go back and try to persuade Kesicki to accept Tennent's original offer. Mrs. Cameron further testified that:

" * * * Mr. Leary told him (Tennent) that he would wait for an hour for his call, and if there was nothing wrong, I could go back to Mr. Kesicki and start working on the deal again, trying to get him the house."

And that as Tennent was about to leave Leary got up:

" * * * and asked Capt. Tennent if he wanted his check back, if he wanted his money back."

She was then asked:

"Q. And what did Capt. Tennent say to that? A. Capt. Tennent said no, he didn't want the check back, he liked the property and wanted the property."

Both Leary and Capt. Tennent corroborated this last statement.

Leary testified with respect to this last incident as follows:

"Q. As you approached the door and he was leaving, was anything in particular said regarding the check? A. The check we—at the time that I offered him that check back we stood up and were—and he was going out, and I said to him, 'Capt. Tennent, do you want your check back?' 'Oh, no,' he says, 'I want the property'. (Leary replied) 'Okay we will get it for you or try' ".

When Tennent was asked if Leary had made these statements in his presence his answer was: "I don't remember him saying that".

Thus we have the positive testimony of both Leary and Cameron, plus the corroborative testimony of Mrs. Coutlee, an employee in Leary's office, who testified as follows:

"Well, just as Capt. Tennent was fixing to leave the office Mr. Leary asked him if he wanted his check back and he said, no."

When asked what else he said, she replied:

"He said he would let him (Leary) know in about an hour, he would call him back, and if he—and as he went out the door Mrs. Cameron said to him, 'well' she says, 'I will go back and see if I can't get this on the original deal and get the Kesickis to accept the original proposition' ".

Mrs. Cameron testified she waited until "much later" before resubmitting the original offer to Kesicki and finally got his acceptance in writing.

The testimony concerning the school situation was that when Tennent informed Leary that Mrs. Tennent was unhappy about available transportation to the school, Leary then and there phoned the superintendent or proper official of the school and was informed that the authorities would route the bus one block closer to the premises. Mrs. Tennent was then sitting outside Leary's office in the Tennent car. Tennent, so far as the record discloses, made no suggestion that this was not satisfactory to him or that he would bring Mrs. Tennent inside the office to express her position in the matter. On the same occasion, at the request of Tennent, Leary procured the consent of the mortgagee to extend the mortgage against the home from fifteen years to a twenty-year period.

In summary, Tennent's refusal to accept the check stating he didn't want it; that he wanted the property; that he liked the property; and his statement that he wanted to take the written offers to his attorney for him to look over them; Mr. Leary's statement that it was all right for him to do so; that he would find nothing wrong with them; Tennent's statement that he would let them hear from him in an hour and being advised that unless they heard from him within an hour they would resubmit his original offer to Kesicki and seek to procure his acceptance, in the absence of a statement from Tennent directing them not to do so until further advice from him, we believe when considered together is clearly susceptible of the interpretation given it by the trial court.

In order to more accurately state our holding in the case relative to the Statute of Frauds, as evidenced in our opinion handed down December 13, 1956 and reported in 304 P.2d 384, we are revising our original opinion as follows:

Counsel for appellant assigns as error that the authorization of the agent to resubmit Tennent's written offer of purchase, had to be in writing. So far as material

here the written contract provides as follows:

"11-17-54

"The undersigned purchaser hereby agrees to purchase the above described property at the price and under the terms and conditions herein set forth. Agent is hereby given 2 days to obtain the seller's acceptance hereof during which period this offer is irrevocable and upon such acceptance this instrument becomes a binding contract on the purchaser's part. In the event of any default on the purchaser's part, all sums paid by the purchaser shall be forfeited as liquidated damages or, at seller's option, this agreement may be enforced by specific performance or other appropriate remedy.

Donald H. Tennent    Eleanor J. Tennent"
Purchaser

That Kesicki's counter-offer to Tennent's offer to purchase his property was in law a rejection of Tennent's offer there can be no doubt. Hargrave v. Heard Inv. Co., 56 Ariz. 77, 80, 105 P.2d 520. This did not, however, affect in anywise Tennent's written authorization to Leary to continue to negotiate with Kesicki for the purchase of said property upon the terms of his written offer. The counter-offer of Kesicki had no more legal effect upon Leary's authority to continue, for a period of two days, to procure the acceptance of Tennent's offer than if Kesicki had simply said: "I will not accept $17,000 for my property." Certainly no one would argue that such a statement whether oral or in writing, would revoke Leary's written authority to continue to urge Kesicki to accept Tennent's written offer, or that the original written offer could not again be resubmitted. There could not possibly be any legal efficacy in requiring the same offer to be rewritten before submitted as counsel seems to argue.

As above indicated the original offer of purchase by Tennent was in writing, and in that offer there was contained a provision which gave Leary two days in which to obtain Kesicki's acceptance thereof. It further provided that during such time the offer was irrevocable. This constituted an agreement with Leary that his authority to close the sale with Kesicki was binding upon Tennent for a period of two days without power of revocation. Leary's efforts to procure Kasicki's acceptance, his securing at Tennent's request, to have the mortgage upon said property extended from fifteen to twenty years, and his efforts in procuring the rerouting of the school bus to pass closer to the property was adequate consideration to support such agreement. He actually procured the acceptance in one day.

In addition to the above written authorization by Tennent for Leary to continue as his agent in his efforts to procure said property, we set forth in our original

opinion in this case, supra, acts, conduct and statements of Tennent to Leary and Mrs. Cameron and their responses thereto which we believe, clearly supported the trial court's judgment in which it necessarily found that it was Tennent's intention to be bound by said written agreement with Leary and to have his written offer resubmitted to Kesicki. Both the authority of the agent to resubmit and the offer to purchase as resubmitted, and the acceptance by Kesicki being in writing, the contention that it violates the Statute of Frauds is without merit.

We do not believe there is any merit to appellant's contention that Kesicki should have been required to offset the amount subsequently received from the property a few weeks thereafter when sold to another purchaser. The contract between Tennent and Kesicki provided that in the event the purchaser defaulted in his performance the earnest money should be forfeited to Kesicki as liquidated damages, and it further provided that in the event of such default and forfeiture, Kesicki was to pay to Leary 50% of said earnest money, or $750, as commission, leaving for Kesicki the same amount.

■ We find the rule to be that although forfeitures are not favored in the law, if the agreement is that such forfeiture was intended as liquidated damages, such contract relating thereto, will be enforced unless the amount agreed to be forfeited would be so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated, so that to enforce it would shock the conscience of the court. Armstrong v. Irwin, 26 Ariz. 1, at page 9, 221 P. 222, 32 A.L.R. 609; Jacobson v. Swan, 3 Utah 2d 59, 278 P.2d 294, 298; 15 Am.Jur., Damages, Sections 248, 249.

■ As above pointed out Kesicki was obligated to pay Leary $750 of the $1,500. He later sold the property for $500 less than Tennent offered to pay for it and he was unquestionably required to pay another commission for that sale. Hence, the forfeiture is not only not disproportionate to the loss sustained by Kesicki but does not fully compensate for his actual out of pocket expense.

Judgment affirmed.

WINDES and STRUCKMEYER, JJ., concur.

UDALL, Chief Justice (dissenting to the revised opinion).

Appellant's motion for a rehearing on the decision handed down December 13, 1956, 304 P.2d 384, was granted and the majority have this day rendered an amended opinion arriving at the same conclusion but upon a different or an additional ground.

I still am of the view that to affirm the judgment of the lower court is unwarranted, and, hence, this dissent. The original majority opinion, as I see it, was predicated upon the theory that Tennent had by his silence assented to the resubmission of his original offer and that this, coupled with other conduct, constituted an estoppel to deny resuscitation of his offer to the vendor. The present majority decision abandons (in part at least) this premise and sustains the judgment below upon a theory (rejected in the first opinion) that Tennent, by the one and only instrument signed by him, had given to Leary (the broker) an irrevocable option for two days in which to procure the unequivocal acceptance by Kesicki (the seller) of his original offer to purchase. In order to avoid being repetitious I reiterate and adopt those portions of my former dissent insofar as they are now applicable to this amended decision.

These additional reasons are advanced as a basis for the instant dissent. Reading the material portion of the written instrument relied upon, it is apparent that it attempted to embrace both an irrevocable contract for two days with Leary and an irrevocable offer to Kesicki (and this is the unequivocal position of appellees' briefs). The latter is clearly an abortive attempt to create a contractual obligation by mere denomination as such. Nowhere is it shown that any consideration was given to support this so-called "option", for clearly it must flow from Kesicki, as the option holder, to Tennent, the alleged option giver. See, Corbin on Contracts, Vol. 1, section 152. I accept the majority view that Kesicki's counter-offer was a rejection of Tennent's offer. I believe that a careful reading of the authority given Leary will disclose it related solely to the original offer; and, if in law that offer had been rejected, Leary's authority was then nothing more than an empty shell for there was no longer an offer of which he could "obtain the seller's acceptance". If so limited, whether there was consideration for the "irrevocable" contract given Leary is immaterial. Thus, there was no "authority" of an agent as would satisfy the Statute of Frauds, section 58–101, subd. 6, A.C.A.1939.

However, if it could be said that the language of the instrument was sufficient to confer upon Leary authority to "close the sale", that power was effectively revoked by the acts and conduct of Tennent at Leary's office. This action was a legal right residing in appellant for the reason that the language of the offer did not in law give to Leary an irrevocable contract to act for two days. See, 12 Am.Jur., Contracts, section 32, and 17 C.J.S., Contracts, § 50a. The promise of Tennent was purely unilateral; such a promise is binding here only if an *executed* consideration (or cash) is exchanged for it. See Corbin, supra, pp. 497, 501, and 12 Am.Jur., supra. The rec-

ord discloses that those acts cited in the majority opinion as constituting consideration were all performed *after* the signing of the offer by Tennent and, therefore, could not constitute an *executed* consideration. There was no "adequate consideration to support such agreement." Certainly this at least should preclude any recovery in favor of Leary.

On this matter of agency, as I pointed out before, Leary is a mere middleman; he was employed by Kesicki as his agent to sell this property; he found the Tennents and took from them the instrument herein relied upon. Leary's compensation was to be derived through Kesicki; yet in the instant case, without any express authorization from Tennent to do so, he purportedly closed "the deal" with Kesicki, Leary, at least, knowing full well that Tennant had not, as of that time, obtained either the assent of his wife or the approval of his lawyer.

Furthermore, even assuming Leary and Kesicki were entitled to recover, which I deny, it shocks my conscience to permit them to declare a forfeiture of all the earnest money paid by Tennents, because within a matter of a short time thereafter it appears the same property was resold to another party for practically the same amount asked of the Tennents, with another broker's fee going to Leary. The amount forfeited ($1,500) was in my opinion so grossly excessive as to be wholly disproportionate to the loss suffered.

For all of the reasons stated in this and the previous dissent I would reverse the judgment.

LA PRADE, J., concurs in this dissent.