[Civ. No. 17823. Second Dist., Div. One. Apr. 3, 1951.]

CLARA BLUM BARTLETT et al., Respondents, v. MELVILLE E. ROGERS et al., Appellants.

George W. Rochester for Appellants.

Steiner A. Larsen and Garvin F. Shallenberger for Respondents.

HANSON, J. pro tem.—This is an unmeritorious appeal from a judgment rendered in an action seeking specific performance of a contract and to enjoin the appellants from interfering with its subject matter.

The facts which are here material deduced from the evidence most favorable to the respondents are readily stated. Early in 1948 or late in 1947 the defendant-appellant Melville Rogers learned that the Los Serranos Country Club and the property of a water company which supplied water to it could be purchased as a unit for approximately $150,000. As neither appellant Melville Rogers nor his wife Consuelo were

possessed of any capital whatsoever he sought to interest his brother Kenneth A. Rogers, a plaintiff-respondent, in purchasing the property. Kenneth, unlike his brother, was possessed of considerable financial means. Moreover, he was a golfer of some renown and retired from business and hence was attracted by the possibilities of the property. However, as the down cash payment required was about $90,000 and Kenneth could not raise more than half that sum without unduly sacrificing some of his assets, Melville sought and found in plaintiff-respondent Bartlett a person who was willing to supply one half the funds needed. Before the purchase was consummated the plaintiffs and the defendant Melville agreed that the latter should be employed by the plaintiffs to manage the country club at a salary of $6,000 annually for his services and those of his wife plus 20 per cent of the net annual profits in excess of $10,000 and free living quarters; that the balance of the net profits should be paid to the plaintiffs until such time as the moneys invested in the project by plaintiffs were repaid to them with interest at 5 per cent; that when this was accomplished the two plaintiffs and the defendant Melville were to own the properties in equal shares. At the suggestion of a third party—one McCormick, a recent arrival from Europe who posed as a doctor, but had no such degree, and was employed by the plaintiff Bartlett as her "investment counselor," the parties concluded that the defendant Melville should execute a note to the plaintiffs in the sum of $90,000 to evidence the investment of the plaintiffs and that it should be payable only out of the net profits of the country club operation; that title should be vested of record in Melville; that the latter should execute and deliver grant deeds of the property to the plaintiffs so that they could record them at any time they chose to do so. To carry out this agreement Melville, who was not an attorney, drafted an ambiguous contract that was supposed to carry out the terms thus agreed upon. The contract, as drafted, was executed by all the parties and is known in the record as Exhibit "A." After the properties were acquired and documents had been executed and delivered as contemplated by the contract, the defendant Melville took over the management of the property. The anticipated profits did not materialize and the plaintiffs being dissatisfied with the manner in which Melville managed the property demanded that he leave it; that he accept $2,000 for all his right, title and interest in the property and for all his claims against the plaintiffs under a threat by the plain-

tiffs that unless he did so they would institute actions in court against him. As a result of letters passing between the parties they reached an agreement that the defendant would leave the country club and disclaim any rights he had therein or against the plaintiffs on June 6, 1949, upon the payment of $2,000 unless in the meantime he was able to pay to plaintiffs what they had invested in the properties. If he did so he was to be invested with all the rights plaintiffs had in the properties. As the defendant Melville failed in his endeavors, the plaintiffs tendered to him the sum of $2,000, recorded the deeds the defendant had originally executed to them, and demanded the disclaimers. The defendant refused to accept the $2,000 or otherwise comply with the demands of the plaintiffs. Accordingly, they instituted the instant action in the court below resulting in the judgment heretofore narrated.

The appellants challenge the judgment upon several grounds, which we shall discuss briefly in the order they are made.

Appellants' first contention that as the real estate involved was located in San Bernardino County the suit should have been instituted in that county and hence that the court was without jurisdiction, is without merit. The action was for specific performance and for injunction and hence did not fall within the inhibitions of section 5 of article VI of the Constitution. (*Cohen* v. *Hellman Commercial T. & S. Bank,* 133 Cal.App. 758 [24 P.2d 960].)

Appellants next contend that the court was without jurisdiction to order Melville to execute documents which would transfer from him to the plaintiffs the title to the assets of the water company, because it was a public utility and, so the argument runs, within the exclusive jurisdiction of the Public Utilities Commission. Unquestionably that body has power to refuse to approve a sale or transfer as between a seller and a buyer, but its power is not exclusive of or equal to that of the courts. As between individuals or other entities such as corporations a transfer or sale of the assets of a public utility is void unless and until the Public Utilities Commission issues its order of approval. However, that fact does not bar parties from entering into contracts for the sale or transfer of the assets of a public utility. Moreover, the rights, duties and liabilities that accrue from such a contract are for the courts to determine and not the commission. The court was vested with the power to order the defendants to execute documents to transfer the assets of the utility to the

extent of their interest therein. If any such transfer proved ineffective to vest the respondents with title, for lack of an order by the Public Utilities Commission, it is a matter of no concern to appellants. In *Hanlon* v. *Eshleman,* 169 Cal. 200, 203 [146 P. 656], the court said: "With the rights of an intending purchaser the commission has nothing to do. Nor has it power to determine whether a valid contract of sale exists, or whether either party has a legal claim against the other under such contract. These are questions for the courts, and not for the railroad commission, which is merely authorized to prevent an owner of a public utility from disposing of it where such disposition would not safeguard the interests of the public."

Accordingly, it is plain the court was vested with jurisdiction to make the order it did and it was not necessary for the plaintiffs to allege any fact pertaining to the commission's jurisdiction.

█ The next contention urged by appellants is that no cause of action is stated. We find no merit in the contention. The complaint avers that the parties originally entered into a written contract (Exhibit "A"); that thereafter the plaintiffs declined to carry out the terms of that contract and proposed in lieu thereof to enter into a new contract; that the parties through the medium of letters set forth as exhibits to the complaint entered into a new contract the terms of which were embodied in a formal written contract, modified in certain particulars by letters dispatched after the formal written contract was signed; that while the formal written contract was executed by the plaintiffs alone and not by the defendants the latter nevertheless in a letter expressly referred to and adopted said contract. The complaint then goes on to aver compliance with the contract on the part of the plaintiffs and sets forth the breaches thereof by the defendants. Other facts alleged in the complaint need not be detailed. Plainly a good cause of action was stated. █ One is bound by a written contract which he has not signed when by a signed letter he expressly refers to and adopts it.

The next contention is that the findings are not supported by the evidence. That the findings are amply sustained by the evidence as set forth in the engrossed settled statement is, in our opinion, not open to question. Accordingly, we see no point in going into any further detail.

The further contentions that the original agreement "was tainted with usury"; that the "respondents practiced duress,

coercion and compulsion upon appellants'' are, likewise under the facts, entirely devoid of merit.

As in our view the trial court committed no error and entered a correct judgment, the judgment is affirmed. The appeal from the order denying a new trial is dismissed for the reason that no appeal lies from such an order.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 23, 1951, and appellants' petition for a hearing by the Supreme Court was denied May 28, 1951.