[Civ. No. 5545.    Fourth Dist.    Oct. 21, 1957.]

PAUL B. DILLINGHAM, Appellant, v. JACK SCHIPP, Respondent.

Loren W. Smith for Appellant.

C. E. Crowley for Respondent.

*Assigned by Chairman of Judicial Council.

BARNARD, P. J.—In April, 1946, the plaintiff and the defendant entered into a partnership agreement limited to the business of transporting passengers by bus in and near Upland and Ontario under the name of Citrus Belt Lines. They operated under a franchise or permit issued by the Public Utilities Commission, which will be herein referred to as the Commission. The operative rights and all property of the partnership have at all times remained in the name of the partnership.

Each of the parties devoted his entire time to this business until October 6, 1952. On that day they entered into a written "sale agreement" in which the defendant agreed to sell his interest in Citrus Belt Lines to the plaintiff for $20,000, payable $200 per month plus interest. This agreement provided that in the event of default the defendant should have the right to repossess the motor vehicles used in said business; that the plaintiff should have the right to continue the operation of the bus line, and a transfer of the franchise held by the parties as copartners would be made within a reasonable time; that in making this settlement "in dissolution of their partnership" it was agreed that the plaintiff had withdrawn amounts from the partnership in excess of the amounts withdrawn by the defendant; that when the amount of such excess was determined the plaintiff would give the defendant a promissory note to cover that amount so as to make the drawings equal; and that for the purpose of carrying out the terms of this agreement "and procuring the proper assignment of the franchise and other properties herein" a certain party was appointed as escrow agent for both parties. About that time the plaintiff gave the defendant a note in the sum of $2,063, presumably for money personally owed by the plaintiff to the defendant.

The plaintiff took possession of the partnership property and operated the bus line for the next two years. His yearly financial reports to the Commission were made in his own name, but no application was made to the Commission for permission to make this transfer. The plaintiff also filed a certificate of doing business under a fictitious name with the county clerk, showing himself as sole owner of Citrus Belt Lines.

In September, 1954, the plaintiff advised the defendant that he could no longer make the payments under the contract of October 6, 1952, and after some negotiations the parties entered into a new "sale agreement" dated September 28,

1954. This agreement provides that the plaintiff agrees to sell and convey his interest in this bus business to the defendant for $10,000, payable $1,000 on October 1, 1954, and $100 plus interest per month until fully paid; that any indebtedness contracted by the plaintiff for the operation of the bus line prior to October 1, 1954, should be paid by the defendant and deducted from the purchase price of $10,000; that any indebtedness of the defendant to the plaintiff should also be deducted from that purchase price; and that the plaintiff "agrees to assign his interest in Citrus Belt Lines to Jack Schipp at a hearing before the (Commission) whenever it is held."

The defendant then took possession of the bus lines, and has since operated it. On November 15, 1954, the plaintiff brought this action. Among other things, the complaint alleged that the agreement of October 6, 1952, was an attempt to assign or dispose of the whole or a substantial part of the property of the partnership, was in violation of the Public Utilities Act, and was void; that while that agreement purported to be an agreement of dissolution of the partnership the defendant did not intend that it should effect such a dissolution but, on the other hand, the defendant induced the plaintiff to enter into this agreement for the purpose of drawing $200 per month out of the partnership operations without performing any services for the partnership; that the amounts paid the defendant under that agreement were taken out of partnership funds and are a part of the assets of the partnership; that the plaintiff was compelled to enter into the agreement of September 28, 1954, because of this depletion of the partnership funds, and the extra expense caused by the loss of defendant's services to the partnership; and that the plaintiff was thus compelled to go into debt to keep said business in operation during those two years. The prayer was for a decree ordering the dissolution of the partnership, that the defendant be required to give a full accounting of all the partnership business, and that the court make its order determining the rights of the parties in said partnership and its property. The answer admitted and denied various allegations of the complaint, and alleged in general that the agreements of October 6, 1952, and September 28, 1954, were entered into by the parties in good faith; that they are fair and binding as between the parties and the rights of the parties are controlled thereby; that the parties had agreed that they would appear before the Commission when their affairs were in such shape that this could be done; and that both parties were obligated

to consider themselves as still interested as partners insofar as the Commission was concerned. It was prayed, among other things, that the court adjudge the two contracts to be valid and binding upon the parties; that each of the parties be required to appear before the Commission and jointly apply for such change in the ownership of the franchise as might be proper under the interpretation placed by the court on the two contracts; that it be decreed that the partnership is dissolved; and that each party be required to perform under the agreements as their respective obligations shall be determined by the court.

At the trial it was stipulated that both parties knew that the proposed agreements should be submitted to the Commission for approval. The trial of the case proceeded upon the assumed basis of the continued existence of the partnership, and upon the issues as to whether the agreements in question were void in their entirety or whether they were executory in nature and valid as between the parties. At several points the attorney for the plaintiff objected to testimony with relation to various amounts paid, on the ground that he was interested in the contracts rather than in an accounting. In deciding the case the court expressed the opinion that these contracts were valid as to their executory portions in determining the rights of the parties among themselves, and subject to the approval of the Commission; that the purposes and effects of these contracts may be accomplished in a legal manner by approval of the Commission; and that there is nothing to indicate that the parties intended to carry out their obligations in an illegal manner.

The court found, in part, that each of the parties was well aware that the transfer and operation of this business was subject to regulation by the Commission, and was well informed as to the conditions under which a legal transfer of the franchise and equipment of this utility could be made; that under the agreement of October 6, 1952, the plaintiff took exclusive charge of the business and its equipment and operated the same until September 28, 1954, when the parties entered into the second of these agreements; that since that date the defendant has been in possession and full charge of the operation of this business; that each of these agreements was entered into by each of the parties in good faith, and no fraud on the part of either party was involved; that said agreements and each of them were binding upon the parties as between themselves, subject to the approval of the Commis-

sion; that under the agreement of September 28, 1954, the defendant has been entitled to operate said bus lines as he has operated them; that said agreement is the only one of said agreements now in force and it is subject to the conditions that the defendant comply with its terms, and that before the actual transfer of title to the franchise and equipment of the utility involved the Commission must approve such transfer; that after said approval the defendant will be entitled to have said Citrus Belt Lines and all its equipment and franchise transferred to him; that no fraud was perpetrated on either party by the other party; and that, since the partnership between the parties was limited to the operation of this utility, upon approval of the transfer by the Commission the settlement between the parties will be complete and will then effect a dissolution of the partnership without further procedure. Judgment was entered in accordance with the findings, providing that no actual transfer of said Citrus Belt Lines, its franchise and equipment, can or will be fully completed without and until the approval of the Commission has been obtained; that both parties are required to appear before the Commission or give their consent that said transfer be completed; that as between themselves and pending the completion of said sale the contract of September 28, 1954, is in full force and effect, subject to the conditions above stated; and that pending the time when the approval of the Commission has been obtained the defendant is entitled to continue in the possession of the bus system, its equipment and franchise, and to continue to operate the same for the public service.

The plaintiff has appealed from this judgment. It is conceded in the briefs that after notice of appeal was filed the respondent filed an application with the Commission for an order transferring the franchise to himself and for an approval of the sale agreement. The appellant filed a protest based on the fact that this appeal was pending before this court. The examiner for the Commission ordered the matter off calendar until this appeal has been decided.

The appellant contends that it is immaterial whether or not there had been a dissolution of this partnership because there was no termination and no accounting; that the contracts of October 6, 1952, and September 28, 1954, must be construed together as involving one transaction between partners occupying a confidential relationship to each other; that the contract of September 28, 1954, while designated as a sale agreement, amounted to nothing more than an agreement to allow the

respondent to repossess under the contract of October 6, 1952, because of appellant's failure to make the payments therein called for; that it was the appellant's payments to respondent out of partnership funds during the two years which caused him to be unable to meet his bills and forced him to enter into the agreement of September 28; that the only consideration for the second contract was respondent's agreement to pay the partnership debts with partnership money which respondent had received while appellant was operating the bus line; that both contracts, purporting to sell a public utility and providing for payments payable at a period of more than 12 months, were void because entered into before the approval of the Commission was obtained; that these contracts being void the operation of the bus line by the appellant from 1952 to 1954 and thereafter by the respondent was, and is, illegal and the judgment permitting the respondent to continue to operate the property is contrary to law; and that the evidence does not satisfactorily show that the respondent has paid "all the indebtedness incurred by the partnership while appellant was operating it," as he agreed to do under the contract of September 28, 1954.

While the agreement of October 6, 1952, purported to give the respondent a right to repossess the property on the failure of the appellant to make the payments provided for, there is nothing in the record to indicate that that right was ever exercised by the respondent. On the other hand, it clearly appears that instead of such a repossession under the prior contract the parties entered into a new agreement on different terms, under which the respondent would take over the operation of the bus line, which superseded the prior agreement. Under the first of these agreements and as between themselves, the payments made by appellant to respondent, during the two-year period, were not partnership funds; and the respondent was not, by the second agreement, agreeing merely to pay partnership debts with partnership money he had wrongfully received. Both agreements were made in good faith, as the court found, and the appellant operated the business during the two years for himself and not for the partnership.

The appellant argues that any sale or attempted sale or transfer of a public utility is void from the beginning unless the approval of the Commission is first obtained, and that in applying for the approval of such a sale or transfer the parties must submit to the Commission a "proposal" showing the terms of the proposed transaction but may not enter into an

agreement in advance of the Commission's approval. One of the rules of the Commission provides for the submission, in connection with such an application, of a copy of ''each plan or agreement for purchase,'' if there is one. The proposal made to the Commission may be in the form of an executory agreement, and the validity of such an agreement, as between the parties, has been upheld in this state. ▮▮ In *Bartlett* v. *Rogers,* 103 Cal.App.2d 250 [229 P.2d 434], the court said:

''As between individuals or other entities such as corporations a transfer or sale of the assets of a public utility is void unless and until the Public Utilities Commission issues its order of approval. However, that fact does not bar parties from entering into contracts for the sale or transfer of the assets of a public utility. ▮▮ Moreover, the rights, duties and liabilities that accrue from such a contract are for the courts to determine and not the commission. The court was vested with the power to order the defendants to execute documents to transfer the assets of the utility to the extent of their interest therein. If any such transfer proved ineffective to vest the respondents with title, for lack of an order by the Public Utilities Commission, it is a matter of no concern to appellants. In *Hanlon* v. *Eshleman,* 169 Cal. 200, 203 [146 P. 656], the court said: 'With the rights of an intending purchaser the commission has nothing to do. Nor has it power to determine whether a valid contract of sale exists, or whether either party has a legal claim against the other under such contract. These are questions for the courts, and not for the railroad commission, which is merely authorized to prevent an owner of a public utility from disposing of it where such disposition would not safeguard the interests of the public.' ''

The agreement here complied with the rule there stated and it is merely an executory agreement which was subject to the approval of the Commission, as found and held by the court. The agreement of September 28, 1954, is still subject to the approval of the Commission, it was entered into by the parties with that understanding, and the court correctly held it to be valid and binding as between the parties subject to the conditions named in the judgment.

Whether this was a valid contract as between the parties themselves was a question for the court and not for the Public Utilities Commission. (*Bartlett* v. *Rogers, supra.*) If the transfer of the property proposed in that contract is approved by the Commission the settlement and agreement between the parties will then be complete, and will effect a dissolution

of the partnership without further procedure. One of the conditions of the judgment is that the respondent perform the terms of the agreement of September 28, 1954, which are to be performed by him. Any further question as to whether he has fully performed, in the event the transfer is approved by the Commission, will arise in connection with the rights of the parties under that contract and will not be in the nature of an accounting in a partnership proceeding.

The judgment is affirmed.

Griffin, J., and Stone, J. pro tem.,* concurred.

A petition for a rehearing was denied November 18, 1957, and appellant's petition for a hearing by the Supreme Court was denied December 17, 1957.

*Assigned by Chairman of Judicial Council.