285 S.E.2d 424 (1981)
COMMUNITY BANK AND TRUST, N. A.
v.
Charles M. KEYSER, Willene P. Keyser and Hamilton Electronics Corporation.
MIDDLETOWN NATIONAL BANK
v.
C. M. KEYSER and Hamilton Electronic Corporation.
Nos. 14723, 14722.
Supreme Court of Appeals of West Virginia.
December 18, 1981.
*425 Elizabeth H. Rose, Duane Southern, Rose Southern & Padden, Fairmont, for appellants.
Stephen R. Brooks, Furbee, Amos, Webb & Critchfield, Fairmont, for appellees.
McHUGH, Justice:
These actions, No. 14723 and No. 14722, involving appellees, Community Bank and Trust and Middletown National Bank, respectively, involve similar fact situations and were consolidated in this Court for the purpose of argument. Both actions arise from final orders of the Circuit Court of Marion County, West Virginia. Pursuant to those orders, judgment was entered in favor of the appellee banks and against the appellants with respect to the unpaid balance upon certain notes executed by the appellants in 1971. Pursuant to W.Va. Code, 58-5-25 [1931], this Court, by orders entered September 11, 1981, granted the motion of the appellants for leave to move to reverse the final orders of the circuit court. This Court has before it all matters of record and the briefs and argument of counsel.

COMMUNITY BANK AND TRUST
The action involving the appellee, Community Bank and Trust (hereinafter "Community Bank"), is before this Court upon the petition of the appellants, Charles Keyser, Willene Keyser and Hamilton Electronics Corporation, for an appeal from the final order of the Circuit Court of Marion County, West Virginia.
By order entered October 12, 1978, upon a jury verdict, Community Bank recovered $22,104.94, plus interest and costs from the appellants. This recovery was based upon the default of the appellants upon a $50,000 loan. The appellants failed in circuit court to recover upon their theory of usury.[1]
During the period in question, the appellant, Charles Keyser (hereinafter "Keyser"), was the president and sole stockholder of Hamilton Electronics Corporation (hereinafter "Hamilton Electronics"). Charles Keyser and the appellant, Willene Keyser, are husband and wife. Hamilton Electronics, a West Virginia corporation located in Marion County, West Virginia, was engaged in the business of making glass parts for electronic and electrical components.
On May 27, 1971, Keyser met with William McLaughlin, an officer of Community Bank, and discussed a loan transaction to raise funds for Hamilton Electronics. Subsequently, by money order dated June 7, 1971, Community Bank loaned $50,000 to Keyser. That money order was made payable to "C. M. Keyser." The record indicates that Keyser applied for the loan as an individual.
In return for the loan, the appellants, Charles Keyser, Willene Keyser and Hamilton Electronics, executed a note dated June 7, 1971, whereby the appellants jointly and *426 severally promised to pay the $50,000 with interest at 7½ per cent per annum. The note was to be paid in installments on a monthly basis over a ten year period. The collateral for the loan was described upon the note as follows: "Community Bank and Trust. N.A. Passbook Savings Account and $100,000 Hamilton Electronics Corporation, 10% convertible debentures due June 15, 1981."
With respect to the collateral for the loan, the record indicates that the $100,000 Hamilton Electronics convertible debentures placed with the bank were owned by Keyser. On the other hand, the savings account opened at Community Bank as collateral for the loan was in the name of Hamilton Electronics and initiated by a $25,000 deposit made by Hamilton Electronics by check dated June 7, 1971. During the period in question, that savings account earned 4½ to 5 per cent interest.
The record indicates that Community Bank kept the passbook to the savings account. Withdrawals could not be made from the savings account without the consent of the bank.
Until the time of default, payments on the note were made by Hamilton Electronics.[2] Subsequently, Community Bank applied the funds in the savings account to the unpaid balance of the loan.
On November 22, 1977, Community Bank instituted an action in the Circuit Court of Marion County against Charles Keyser, Willene Keyser and Hamilton Electronics for the unpaid balance of the $50,000 loan. The appellants filed a counterclaim against the bank asserting that the loan was usurious.
The circuit court, upon a determination that West Virginia law barred a corporation from asserting the defense of usury, dismissed the counterclaim of Hamilton Electronics. Moreover, the circuit court by order entered January 23, 1978, held that pursuant to federal law Charles Keyser and Willene Keyser were limited in their recovery, if any, against the bank to two times the interest actually paid by them upon the loan. Trial began in the circuit court on October 10, 1978, and the action of Community Bank and the usury counterclaim of Charles Keyser and Willene Keyser were submitted to the jury. As reflected in the final order of the circuit court entered October 12, 1978, the jury found against the Keysers upon the counterclaim and found in favor of Community Bank in the amount of $22,104.94.

MIDDLETOWN NATIONAL BANK
The facts in the action involving Middletown National Bank are similar to the facts in the action involving Community Bank.
The action involving the appellee, Middletown National Bank (hereinafter "Middletown Bank"), is before this Court upon the petition of the appellants, Charles Keyser and Hamilton Electronics Corporation, for an appeal from the final order of the Circuit Court of Marion County, West Virginia.
By order entered May 11, 1979, upon a jury verdict, Middle town Bank recovered $11,161.30, plus interest and costs, from the appellants. This recovery was based upon the default of the appellants upon a $25,000 loan. The appellants again failed in circuit court to recover upon their theory of usury.
On June 30, 1971, Middletown Bank loaned $25,000 to Charles Keyser (hereinafter "Keyser"). That loan was represented by a check made payable to "C. M. Keyser." The record indicates that Keyser applied for the loan as an individual.
In return for the loan, the appellants, Charles Keyser and Hamilton Electronics, executed a note dated June 30, 1971, whereby the appellants jointly and severally promised to repay the $25,000 loan with interest at 7½ per cent per annum. The note was to be paid in installments on a monthly basis over a ten year period. The collateral for the loan was described upon the note as follows: "Debentures No. 10, 11, *427 12, 14, 17, for Hamilton Electronics Corporation, Due June 15, 1981, and dated June 4, 1971."
With respect to the collateral described in the note, the record indicates that $50,000 in Hamilton Electronics debentures owned by Keyser was placed with Middletown bank. As additional collateral for the loan, a life insurance policy was assigned to the bank. Furthermore, a checking account in the amount of $12,500 was opened on June 30, 1971, at Middletown Bank in the name of Hamilton Electronics. That checking account was initiated by a deposit made by Hamilton Electronics. The record indicates that the checking account was not an interest bearing account. Moreover, the record indicates that during the period in question the appellants could not withdraw money from the checking account without the consent of the bank.
Until the time of default, payments on the note held by Middletown Bank were made by Hamilton Electronics.[3] Subsequently, Middletown Bank applied the funds in the checking account to the unpaid balance of the loan.
On October 19, 1978, Middletown Bank instituted an action in the Circuit Court of Marion County against Charles Keyser and Hamilton Electronics for the unpaid balance of the $25,000 loan. Willene Keyser was not joined as a party. The appellants filed a counterclaim against the bank asserting that the loan was usurious.
The circuit court, as it did in the Community Bank action, determined that West Virginia law barred a corporation from asserting the defense of usury. Therefore, the circuit court dismissed the counterclaim of Hamilton Electronics against Middletown Bank. Moreover, the circuit court held that pursuant to federal law Charles Keyser was limited in his recovery, if any, against the bank to two times the interest he paid upon the loan.
Trial began in the circuit court on May 8, 1979, and the action of Middletown Bank and the usury counterclaim of Charles Keyser were submitted to the jury. As reflected in the final order of the circuit court entered May 11, 1971, the jury found against Keyser upon the counterclaim and found in favor of Middletown Bank in the amount of $11,161.30.
It is from the final orders of the Circuit Court of Marion County in the Community Bank and Middletown Bank actions that the appellants appeal to this Court.

I
The circuit court in the Community Bank and Middletown Bank actions ruled that the counterclaims of the appellants were governed by federal law. That conclusion by the circuit court was reflected in its determination that Hamilton Electronics could not assert a claim of usury and further that any recovery of Charles and Willene Keyser for usury was limited to two times the interest they actually paid upon the $50,000 and $25,000 loans. We agree with the circuit court that the counterclaims of the appellants were governed by federal law.
Both Community Bank and Middletown Bank are national banking associations. Pursuant to 12 U.S.C. § 85, the rate of interest national banks may charge for loans, such as the loans before this Court, is determined by state law.[4] As stated in *428 Rockland-Atlas National Bank of Boston v. Murphy, 329 Mass. 755, 756, 110 N.E.2d 638, 639 (1953), the purpose of section 85 "... is to put national banks on an equality with State banks in competing in the business of lending money." Accordingly, pursuant to 12 U.S.C. § 85, the circuit court in the Community Bank and Middletown Bank actions utilized West Virginia law as a basis for determining whether the loans in question were usurious.[5] Specifically, in both actions, the circuit court pursuant to W.Va. Code, 47-6-10 [1979], dismissed the counterclaim for usury of Hamilton Electronics. As W.Va.Code, 47-6-10 [1979], provides: "No corporation, partnership, or limited partnership may interpose the defense of usury in any civil action, nor may any bond, note, debt, or contract of a corporation, partnership, or limited partnership be set aside, impaired, or adjudged invalid by reason of anything contained in the laws prohibiting usury."
In Monongahela Appliance Company v. Community Bank and Trust, 393 F.Supp. 1226 (N.D.W.Va.1975), aff'd., 532 F.2d 751 (4th Cir. 1976), a corporate borrower brought an action pursuant to 12 U.S.C. § 85 and 12 U.S.C. § 86 to recover from a national bank twice the amount of alleged usurious interest paid by the corporate borrower upon a promissory note. In that action, the bank agreed to loan the corporation $950,000 at an interest rate of 8½ to 11½ per cent, and the corporation was to maintain a deposit account as security for the loan.
In Monongahela Appliance Company, the United States District Court for the Northern District of West Virginia entered summary judgment in favor of the national bank. The Court recognized that 12 U.S.C. § 85 adopted state law with respect to the maximum rate of interest to be charged by national banks and that, therefore, West Virginia law applied for purposes of determining whether the corporate borrower was the victim of usury. Specifically, the Court held that pursuant to 12 U.S.C. § 85 the action of the corporate borrower was barred by W.Va.Code, 47-6-10 [1979], which statute, as construed by the district court, denied to corporations actions for usury. As the court in Monongahela Appliance Company recognized:
A national bank located in a State the law of which denies the defense of usury to a corporate borrower may charge a corporate borrower any rate of interest agreed upon by such borrower.
393 F.Supp. at 1229.
Thus, by way of 12 U.S.C. § 85, the circuit court, pursuant to W.Va.Code, 47-6-10 [1979], dismissed in both actions the counterclaim of Hamilton Electronics for usury. However, the circuit court did not look to West Virginia law for its determination that Charles and Willene Keyser were limited in their recovery, if any, for usury to two times the interest they actually paid upon the $50,000 and $25,000 loans. Rather, the circuit court in so holding applied the provisions of 12 U.S.C. § 86. That section states as follows:
The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the *429 amount of the interest thus paid from the association taking or receiving the same: Provided, That such action is commenced within two years from the time the usurious transaction occurred.
Section 86 provides the sole remedy for the recovery of usurious interest paid to a national bank. Schumacher v. Lawrence, 108 F.2d 576, 577 (6th Cir. 1940). As stated in Beatrice Production Credit Association v. Vieselmeyer, 376 F.Supp. 1391, 1392 (D.Neb. 1973): "[A]lthough national banks are by specific congressional direction made subject to the usury laws of the state wherein the banks do business, the penalty for charging a usurious rate of interest is not governed by state law."
Upon all of the above, therefore, this Court is of the opinion that the Circuit Court of Marion County was correct in the Community Bank and Middletown Bank actions in applying federal law to dismiss the counterclaims of Hamilton Electronics for usury. Furthermore, the circuit court was correct in applying federal law to limit the recovery in both actions of Charles and Willene Keyser for usury to two times the interest actually paid by them upon the $50,000 and $25,000 loans.

II
The principal assertion of the appellants before this Court in the Community Bank action is that the loan transaction of June 7, 1971, was usurious as a matter of law and that the circuit court committed error in submitting the usury issue to the jury. The reasoning of the appellants is that inasmuch as Community Bank required a $25,000 savings account as collateral for the loan, Keyser, in effect, received from the bank a $25,000 loan rather than a $50,000 loan. Therefore, the bank is guilty of usury, the appellants contend, because the interest upon the $25,000 loan would be 10½ per cent at a minimum, 8 per cent being the maximum rate the bank could legally have charged for the loan.
Similarly, in the Middletown Bank action, the appellants assert that the loan transaction of June 30, 1971, was usurious as a matter of law and that the circuit court committed error in submitting the usury issue to the jury. Specifically, the appellants assert that inasmuch as Middletown Bank required a $12,500 checking account as collateral for the loan, Keyser, in effect, received from the bank a $12,500 loan rather than a $25,000 loan. Therefore, Middletown is guilty of usury, the appellants contend, because the interest upon the $12,500 loan would be approximately 15 per cent, 8 per cent being the maximum rate the bank could legally have charged for the loan.[6]
Specifically, in support of their usury claims the appellants cite Annot., 92 A.L. *430 R.3d 769, 774 (1979), where the following general rule is stated:
It is generally recognized that if as a condition of making a loan, the borrower is required to leave part of the money on deposit with the lender, the transaction is usurious where the interest paid for the loan amounts to more than the legal interest on the balance left in the borrower's hands for his actual use.
In Reid v. National Bank of Georgia, 149 Ga.App. 834, 256 S.E.2d 82 (1979), cited by the appellants, the National Bank of Georgia instituted a suit to recover the principal and interest upon a promissory note. The note had been executed by the defendant in connection with a loan in the amount of $105,000. The defendant asserted usury, stating that to obtain the loan the defendant was required to maintain at the bank a demand deposit of a least 20 per cent of the principal amount due upon the note. The defendant contended that the 20 per cent demand deposit was, in effect, a withholding of loan proceeds by the bank thus rendering the loan usurious.
In Reid, the Court of Appeals of Georgia, holding that there was no material issue of fact as to the defense of usury, affirmed a summary judgment in favor of the bank. 256 S.E.2d at 84. Specifically, the Court in Reid noted that, in the absence of evidence that the defendant was limited in his use of the funds in the demand deposit at the bank, no usury existed.[7]
Relying upon the reasoning of the Court of Appeals of Georgia in Reid, the appellants conclude that inasmuch as withdrawals from the savings account in Community Bank and the checking account in Middletown Bank could not be made without the consent of the respective banks, the loans were usurious.
In Syl. pt. 4, Carper v. Kanawha Banking & Trust Company, 157 W.Va. 477, 207 S.E.2d 897 (1974), this Court held as follows:
The usury statute contemplates that a search for usury shall not stop at the mere form of the bargains and contracts relative to such loan, but that all shifts and devices intended to cover a usurious loan or forbearance shall be pushed aside, and the transaction shall be dealt with as usurious if it be such in fact.
See also Syl. pt. 3, Crim v. Post, 41 W.Va. 397, 23 S.E. 613 (1895).
Moreover, where the material facts surrounding a transaction are in conflict, the question of usury is for the jury. Usury Laws and Modern Business Transactions 188 (Practicing Law Institute 1981), and J. A. Webb. A Treatise on the Law of Usury § 432 (1899).[8] As stated in Commercial Discount Company v. Rutledge, 297 F.2d 370, 373 (10th Cir. 1961):
Whether a transaction is tainted with usury is a question of fact, and like all other questions of fact, is a question of law whether the proof discloses substantial evidence supporting the facts found. The courts are not rigidly bound by the form with which the alleged usurious transaction took; on the contrary, it has not only the right but the duty to probe behind the written instruments involved and examine all the facts and circumstances, *431 which may shed light upon the true nature of the transaction.
In Bradley v. Houston State Bank, 588 S.W.2d 618 (Tex.Civ.App.1979),[9] Houston State Bank advanced approximately $40,000 to the individual appellants, Terry, Bradley, and Spencer, for the purpose of satisfying a previous note executed in favor of Houston State Bank by the corporate borrower, Spencer, Terry/Padgett & Associates, Inc. In return for the $40,000 Terry, Bradley and Spencer, as individuals, executed a note in favor of the bank for the same amount at 8½ per cent interest per annum. The individual appellants failed to pay the $40,000 note and asserted usury against the bank.
In Bradley, the Court of Civil Appeals of Texas affirmed a directed verdict in favor of Houston State Bank upon the usury issue. In that case, the appellants attempted to submit evidence to the effect that the bank required, as a condition to making the $40,000 loan at an interest rate of 8½ per cent, that a $20,000 compensating balance be maintained upon deposit with the bank. The appellate court held that such evidence was properly excluded by the trial court. Specifically, the appellate court in Bradley held that, inasmuch as the appellants had full use of the loan proceeds and, further, that the compensating balance was not composed of the appellants' funds, the $40,000 loan transaction was not usurious. As the appellate court stated:
In the case before us ... the excluded evidence showed that appellants had full use of the entire proceeds of the loan. The $20,000.00 compensating balance was provided with funds deposited by Guardian Title Company, a corporation of which appellant Bradley was president, into that corporation's existing account with the Bank. There is no indication that any of appellants' own funds were deposited in this account to provide the compensating balance or were in any way expended in an effort to provide such a balance. Therefore the principal amount of the note would not be reduced by the amount of the compensating balance with a resulting increase in the rate of interest, and the compensating balance requirement under the facts of this case does not render the transaction usurious.
588 S.W.2d at 622.
Contrary to Bradley, this Court is not inclined to conclude that a directed verdict in favor of Community Bank and Middletown Bank should have been entered upon the issue of usury. However, this Court finds persuasive the reasoning of the court in Bradley that a transaction may not be usurious if the compensating balance securing to the bank repayment of the loan was deposited by a party who did not receive the loan and was not composed of proceeds from the loan. Similar to Bradley, the questions of which party received the loans, which party deposited the compensating balances and whether those compensating balances were composed of the proceeds from the loans were present in the actions before this Court. This Court is of the opinion that the trial court was correct in submitting those questions and others to the jury. In this regard, this Court is further of the opinion that in both the Community Bank and Middletown Bank actions, the jury was properly instructed upon the appellants' theory of usury.
The evidence indicates that in both actions the loans were made to Charles Keyser individually. The proceeds of those loans were paid by the banks by checks made payable to "C. M. Keyser." On the other hand, the savings account with Community Bank and the checking account with Middletown Bank were opened and maintained in the name of Hamilton Electronics. This Court cannot say as a matter of law that the proceeds from the $50,000 and $25,000 loans were used to open and maintain those compensating balances at the respective banks. The records are not determinative upon that question, and therefore, it was of *432 proper consideration for the jury in both actions. The jury in both actions could have concluded that Keyser had full use of the $50,000 and $25,000 loans.
Furthermore, we find no merit in the assertion of the appellants that Keyser, in effect, rather than Hamilton Electronics repaid the loans prior to default. Assuming that assertion to be true, that Hamilton Electronics charged Keyser's corporate account each time it made a loan payment, the conclusion that the loan transactions were usurious would not necessarily follow. If Keyser had full use of the $50,000 and $25,000 loans and the compensating balances were composed of separate funds, deposited by the corporation, then the fact that Keyser was charged for those compensating balances and loan repayments by Hamilton Electronics would not be sufficient as a matter of law to find the banks guilty of usury.
Moreover, the appellants contend that the circuit court committed error in permitting counsel for the banks to elicit testimony before the jury through the use of a tax return of Charles Keyser. It should be noted, however, that in the Community Bank action, that tax return was admitted into evidence upon the motion of counsel for the appellants. In any event, Keyser's tax return was relevant to the question of whether he considered the loans to be personal obligations, and we find no prejudicial error with respect to its use in both actions before the jury.
Finally, this Court cannot conclude that the circuit court committed error in failing to exclude jurors who were depositors in or borrowers from Community Bank and Middletown Bank. That part of the record concerning the selection of the jury in the two actions was not made a part of the record before this Court. Moreover, the fact that certain jurors were depositors in or borrowers from the banks would not disqualify such jurors as a matter of law. Usually, the question of whether a juror may be biased or prejudiced is left to the sound discretion of the trial judge. State v. Gargiliana, 138 W.Va. 376, 379, 76 S.E.2d 265, 267 (1953).
Upon all of the above, the final orders of the Circuit Court of Marion County in the Community Bank and Middletown Bank actions are hereby affirmed.
Affirmed.
NOTES
[1] In Black's Law Dictionary, 1385 (5th ed. 1979), usury is defined as follows: "A usurious loan is one whose interest rates are determined to be in excess of those permitted by the usury laws. * * * An unconscionable and exorbitant rate or amount of interest." See also Syl. pt. 1, Carper v. Kanawha Banking & Trust Company, 157 W.Va. 477, 207 S.E.2d 897 (1974). The concept of usury has been part of the law for a substantial period of time. As stated by 18th century jurist Sir William Blackstone: "A capital distinction must therefore be made between a moderate and exorbitant profit; to the former of which we usually give the name of interest, to the latter the truly odious appellation of usury: the former is necessary in every civil state, if it were but to exclude the latter, which ought never to be tolerated in any well-regulated society." 1 Commentaries on the Laws of England by Sir William Blackstone, 919 (W.D. Lewis ed. 1897).
[2] As indicated infra, Keyser contends that although Hamilton Electronics made payments on the note with respect to the $50,000 loan, Hamilton Electronics charged those payments to Keyser by debiting his corporate account.
[3] As in the Community Bank action, Keyser contends that although Hamilton Electronics made payments on the note with respect to the $25,000 loan from Middletown Bank, Hamilton Electronics charged those payments to Keyser by debiting his corporate account.
[4] As 12 U.S.C. § 85 provides:

Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter....
[5] As W.Va.Code, 47-6-6 [1968], provides:

All contracts and assurances made directly or indirectly for the loan or forbearance of money or other thing at a greater rate of interest than is permitted by law shall be void as to all interest provided for in any such contract or assurance, and the borrower or debtor may, in addition, recover from the original lender or creditor or other holder not in due course an amount equal to four times all interest agreed to be paid and in any event a minimum of one hundred dollars. Every usurious contract and assurance shall be presumed to have been wilfully made by the lender or creditor, but a bona fide error, innocently made, which causes such contract or assurance to be usurious shall not constitute a violation of this section if the lender or creditor shall rectify the error within fifteen days after receiving notice thereof.
[6] In 1971, the period in question, 8 per cent was the maximum interest that could be charged upon a loan repayable in installments. The statute in effect at that time, W.Va.Code, 47-6-5a [1969], provided as follows:

After the effective date of this section parties may contract for and charge for a secured or unsecured loan, repayable in installments, not in excess of six percent per annum upon the face amount of the instrument or instruments evidencing the obligation to repay the loan, for the entire period of the loan and deduct such charge in advance or add the same to the principal amount of the loan: ... Provided further, That nothing herein contained shall affect or restrict the right of parties under section five of this article to contract in writing for the payment of interest for the loan or forbearance of money at a rate not to exceed eight dollars upon one hundred dollars a year, and proportionately for a greater or less sum, or for a longer or shorter time, including points expressed as a percentage of the loan divided by the number of years of the loan contract: And provided further, That nothing herein contained or contained in said section five of this article shall be taken or construed as authorizing any charge or charges of any kind or character, including interest, on installment loans by the deduction thereof in advance or by adding the same to the principal amount of the loan which singularly or together shall exceed the six percent maximum provided for in this section.
In the Community Bank action, the appellants arrived at the 10½ per cent figure by multiplying 7½ per cent by two and then subtracting 4½ per cent, the 4½ per cent being the amount of interest initially earned upon the savings account of Hamilton Electronics in Community Bank.
In the action involving Middletown Bank, the appellants arrived at the 15 per cent figure by multiplying 7½ per cent by two, 7½ per cent being the interest charged the appellants for the $25,000 loan.
[7] In Reid v. National Bank of Georgia, supra, the Court in its opinion cited Bank of Lumpkin v. Farmers State Bank, 161 Ga. 801, 132 S.E. 221 (1926). In Bank of Lumpkin, the Supreme Court of Georgia stated as follows: "Where a lender makes a loan and requires that a part of the sum shall be kept on deposit with the lender, the loan is usurious. In other words, a condition that a borrower shall keep on deposit a certain sum, if made a condition precedent to a loan of money, infects the loan with usury...." 161 Ga. at 813, 132 S.E. at 226. The Bank of Lumpkin case is cited by the appellants in the actions before this Court.
[8] As indicated in Usury Laws and Modern Business Transactions, supra, at 188: "Whether a transaction not on its face a loan is actually a loan, whether transaction's form is a subterfuge to evade usury law, intent of partiesusually characterized as questions of fact." Moreover, as stated in A Treatise on the Law of Usury, supra, at § 432: "Where the question of usury depends upon evidence not appearing on the face of the contract it is exclusively for the jury."
[9] Upon a writ of error from the judgment of the Court of Civil Appeals in Bradley, supra, the Texas Supreme Court entered the abbreviation "RNRE"application for writ of error refused, no reversible error.