## ANNA MAY MULLEN v. FRANK A. MULLEN.[1]

December 22, 1916.

Nos. 19,972—(117).

**Change of venue.**

1. In refusing a change of venue for the convenience of witnesses, the trial court did not exceed its discretion.

**Divorce — findings — evidence.**

2. The evidence will not justify this court in holding that the findings are unsupported thereby, and the findings are sufficient to sustain the judgment.

Action of divorce in the district court for Ramsey county. Defendant's motion for a change of venue to Stevens county was denied, Hanft, J. The case was tried before Michael, J., who made findings and ordered judgment in favor of plaintiff. Defendant's motion to amend the conclusions of law and order for judgment or for a new trial was denied. From

[1]Reported in 160 N. W. 494.

the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Baldwin & Murphy,* for appellant.

*O'Brien, Young & Stone,* for respondent.

TAYLOR, C.

The trial court granted plaintiff a divorce from defendant on the ground of cruel and inhuman treatment and defendant appeals from the judgment.

He contends: (1) That the court erred in refusing a change of venue; (2) that the evidence fails to establish the charge of cruelty; and (3) that the findings of fact do not justify the conclusions of law.

During their married life the parties resided at Morris in Stevens county. When plaintiff left the family home she removed to St. Paul and thereafter brought her action in Ramsey county. Defendant made a motion for a change of venue to Stevens county on the ground of convenience of witnesses and presented affidavits in support thereof. Plaintiff presented affidavits in opposition thereto. The summons and complaint were served on August 12, 1915. The motion was brought on for hearing on October 2, two days before the opening of the Stevens county term of court, and if granted would have postponed the trial of the case until the March term in that county. The court denied the motion. The determination of such questions rests in the judicial discretion of the trial court, and no abuse of such discretion is shown.

Plaintiff bases her charge of cruelty upon an unvarying course of ill treatment persisted in for years by defendant, and not upon specific acts of violence committed by him. Soon after the marriage he began complaining about the household expenses and demanded that they be cut down. It seems that, instead of furnishing plaintiff money for such expenses, defendant arranged for her to order necessary supplies from the stores, and that the trouble between them had its origin in his habit of berating her for the expense whenever a bill came in. The testimony makes a fair-sized volume, and we shall not attempt to recapitulate or summarize it. The trial court accepted plaintiff's account of defendant's conduct as correct, and to indicate the manner in which he treated her we give a few incidents taken from her testimony. Because she wrote fre-

quently to her mother and brother, defendant refused in an ill-natured manner to let her have money for postage, saying it took lots of money to mail letters and there was no sense in sending so many. Asked as to defendant's attitude toward her when she was doing her own housework before the birth of one of her children plaintiff answered: "I was very ill in the first part of the summer and remember I tried very hard to do my work and to keep up, and Mr. Mullen was always very angry with me if the meals were not just ready the minute he walked in the house, and he used to turn and go down to the restaurant or hotel if I didn't have them ready." Defendant's brother had married plaintiff's sister. Her sister died and plaintiff attended the funeral. She states: "I brought the two little children of his brother and my sister back and he was so angry, he said he had enough to do to keep up his own family, and I didn't know what to do with them." She subsequently took them to her mother. When plaintiff was sick abed and had a niece come to stay with her, defendant found fault with her on account of the expense for the girl's board. When plaintiff procured false teeth, defendant said such expense must be cut out, she was not worth it. When she procured a pair of new shoes for the oldest child to wear at his confirmation, she says defendant was very angry, "and he even took up a shoe and struck me with it right before my two boys, and called me everything,—old lazy thing, if I earned the money I would know how hard it was." When he found a bill for some electric light bulbs and another for some dental work she states: "He stood up from the table and talked about the electric bill and dental bill and flourished his hands and fists and said, 'If you ever dare to have such expenses I will show you,' and I said, 'Frank, it won't be long you will have to show me for I can't stand this,' and he said, 'Go, go, I will be glad to get rid of you.'" When she asked for a little money to enable her to go on a visit to her parents at Bluffton, he gave her ten dollars with the remark, "I wish you would never come back." She insisted on attending the wedding of an intimate friend in South Dakota. Defendant had objected to the expense of the trip, and when she bade him good-by at departing he responded: "Go to hell." Asked how long defendant would go without speaking to her at all, she stated, "weeks and weeks; and when he did speak, of course it would be chastising me about the bills." She states that he frequently accused her of laziness and termed her, "a lazy

lubber, and a lazy good-for-nothing, and a lazy yellow dog;" and that he had not spoken pleasantly to her for years before she left him. When she told him his treatment was driving her to an insane asylum, he replied: "You ought to have been there long ago." At the time of the separation when she told him that she had determined to leave, he replied: "Go, go, who cares if you go; Sim and I will have a good time." Defendant was a merchant who owned his own home and who also owned other property from which he received $175 per month in rentals in addition to the profits from his store, so that his berating of plaintiff on account of the necessary household expenses cannot be explained on the ground of poverty.

We have only the cold record before us. In cases of this nature the trial court who hears the testimony and observes the parties and witnesses has a much better opportunity than we to learn the true situation and reach the real merits of the controversy. In the present case the testimony in connection with the conduct and demeanor of the parties so impressed the trial judge that he stated at the close of the trial among other things:

"A wife should be something more in the home than a useful domestic animal to receive simply food and lodging. While, perhaps, no single act in the course of the years these parties have lived together would be sufficient to constitute what is known as cruel and inhuman treatment, yet aside from the three specific acts of violence which I think are fairly proven by the testimony, the constant and habitual course of treatment by the defendant of his wife, consisting of neglect, and in many instances amounting to contemptuous treatment, carping criticism, habitually applied to her, taking this accumulation of the years it seems to me amounts to one of the most insidious forms of cruelty, when applied to a sensitive woman. As to the results of those things there can be no question in this case. The plaintiff, I think, has been clearly shown to have suffered serious impairment of health."

An unvarying course of faultfinding, insult and oppression, unrelieved by a pleasant word, and persisted in for years, may become more intolerable than blows, and we find no sufficient ground for saying that the trial court erred in its conclusion.

3. The contention that the findings of fact do not justify the conclusions of law is based upon the claim that the finding that defendant "for

many years * * * had been guilty of constant and 'habitual cruel and inhuman treatment of plaintiff," is followed by a statement specifying the character of such treatment which shows that it did not constitute cruel and inhuman treatment within the meaning of the statute. But this statement is followed by the further statement that "this treatment of the plaintiff by the defendant was of such a nature, and so long persisted in, as to be very detrimental, if not ruinous, to the plaintiff's health," and the findings taken as a whole do not evince an intention to restrict or modify the direct finding upon the ultimate fact.

Plaintiff's application for an allowance for attorney's fees in this court having been held in abeyance until this time, it is ordered that she be allowed the sum of $300 therefor, to be included in the judgment for costs and disbursements.

The judgment appealed from is affirmed.

Schaller, J., took no part.