PAT I. PRAVORNE, APPELLANT, *v.* WAYNE McLEOD AND LOUISE McLEOD, RESPONDENTS.

No. 4603

July 16, 1963

383 P.2d 855

*George E. Franklin, Jr.,* of Las Vegas, for Appellant.

*Springmeyer, Thompson & Dixon,* of Reno, for Respondents.

**OPINION**

By the Court, BADT, C. J.:

The question here involved for determination is whether the instrument herein referred to as a contract of purchase and sale was a completed contract, or whether it was merely an offer made by the McLeods to Pravorne to enter into a contract, which offer was rejected by Pravorne and a counteroffer made by him, which in turn was not accepted by the McLeods.

Under similar circumstances the law was very simply stated in Hargrave v. Heard Inv. Co., 56 Ariz. 77, 105 P.2d 520, 521, as follows:

"It is the law that when A offers B to enter into a contract on certain terms, and B declines to accept those terms but offers a counterproposition, the original offer loses its effect, and is thereafter only open to acceptance by B when renewed by A. On the other hand, if A makes an offer which is unconditionally accepted by B, the fact that B, after such acceptance, proposes a modification of the original contract, which is declined by A, does not affect the validity of the original contract. If then, in the present case, the original contract of purchase and sale, upon its delivery to and acceptance by plaintiff, was a completed and binding contract between defendant and the insurance company, the fact that

the latter desired to have certain terms added to those of the contract in the escrow directions to plaintiff does not affect the validity of the contract."

Neither party contests such general recital of the applicable well-established law. Pravorne, in his complaint for specific performance, asserts that there was such completed contract. McLeod insists that his offer to enter into the contract of purchase and sale was not unconditionally accepted by Pravorne but that Pravorne rejected the same and made a counteroffer, which McLeod refused to accept. The case then turns upon the construction of the written instruments and correspondence involved and the actions of the parties thereunder. The facts are as follows:

The parties had been negotiating with respect to a proposed purchase of real property by Pravorne from McLeod. Pravorne had the Nevada Title Insurance Company prepare escrow instructions. They were mailed to McLeod but were unsatisfactory to him, so he had his attorney draft a complete new contract entitled "Agreement for Sale of Realty," which in turn contained escrow instructions. McLeod then mailed this agreement to Pravorne's real estate broker, with a letter addressed to the broker and signed by McLeod, reading as follows:

"Dear Mr. Bell:

"Upon reviewing your Escrow Instructions which were prepared by Nevada Title Insurance Company, I took them to my attorney, Mead Dixon, for his approval.

"Obviously, we decided to prepare our own Agreement of Sale and I am sending it for the examination and approval of your buyer. There is no change in any of the conditions of our telephone agreement, but merely that the conditions are set forth more clearly.

"I am sending two copies of this Agreement to Nevada Title Insurance Company. If the Agreement is acceptable to your buyer, please have him sign and return two copies as soon as possible. We will then sign one and return it to Nevada Title Company immediately.

"If these papers are in order and acceptable to your buyer, we are going to be very anxious to close this matter as soon as possible.

"Sincerely yours,
"Wayne McLeod

"cc: Nevada Title Insurance Company
"118 South Fourth Street
"Las Vegas, Nevada
"ATTENTION: Evelyn Wilson"

Two unsigned copies of the agreement were enclosed. The agreement was between McLeod and his wife, as sellers, and Pravorne as purchaser, and provided that the sellers agreed to sell and the purchaser to buy the described real estate for the purchase price of $70,500, payable $1,000 "on the signing of this contract, by cash or check to the order of Nevada Title Insurance Company, * * * $19,445 by cash or check to the order of Nevada Title Insurance Company * * * on or before closing," and $50,055 "by promissory note of the Purchaser payable to the order of the Sellers in four (4) equal annual instalments of principal, plus interest at 6% per annum, such instalments to be payable on or before May 1 of each year commencing with May 1, 1963, secured by first deed of trust on the above described property." The contract provided further for the apportionment of taxes and special assessments; that the closing should take place at the office of Nevada Title Insurance Company at Las Vegas, and that closing should be effected (a) by depositing such instruments or funds with the title insurance company as might be necessary to effect the closing, (b) that the deed be the usual grant, bargain, and sale deed, (c) that the note and deed of trust be in usual form, (d) that the sellers would furnish a policy of title insurance subject to certain specified exceptions, (e) the division and charging of fees and expenses according to the usual practice of the title insurance company. The contract then provided certain conditions as to brokerage commissions, the resulting situation if the sellers should be unable to convey good merchantable title, that appropriate instructions should be signed by either party upon

demand of the other and that in the event of conflict between the provisions of the agreement and the provisions of any escrow instructions, the provisions of the agreement should prevail.

Pravorne signed the contract of purchase and sale in duplicate and delivered the copies to the title insurance company. The title insurance company mailed the signed agreement to McLeod, but stapled to the agreement were three sheets of paper. For the most part these comprised the regular printed form used by the escrow holder, listing some 20 items concerning escrow instruments with a space to be filled by a checkmark if any of these items were required. On the first page there was typed the following: "Mr. Gordon Bell asked us to prepare an amendment pertaining to Release Clause on the deed of trust to be submitted for your approval and signature." The only items checked in the list of escrow instruments were "Escrow Instructions" and "Amendment to Escrow Instructions." The next page contained the following: "The following Release clause shall be inserted on the deed of trust in favor of Seller: Beneficiary herein agrees to execute Request for Partial Reconveyance for parcels shown on attached plat as follows:" This is followed by a provision for the release of parcel 1 as shown on the plat, upon payment of 28 percent of the balance due at the time of said release; for the release of parcel 2, upon payment of 28 percent; for the release of parcel 3, upon the payment of 28 percent; and for the release of parcel 4, upon the payment of 16 percent of the balance due under the note and deed of trust.

Both parties moved for summary judgment. The court below denied plaintiff's motion and granted defendants'. Thereupon plaintiff moved to vacate the judgment, and has appealed from the order denying his motion, as well as from the judgment.

The case turns upon the question whether the title company's return to the sellers of the signed contract, accompanied by the notation that Mr. Bell, the buyer's broker, asked the title company to prepare an amendment relating to the release clause "on the deed of trust

to be submitted for your approval and signature" constituted a conditional acceptance, in effect, a rejection of the offer and the submission of a counteroffer; or whether the signing and returning of the contract was an unconditional acceptance, resulting in a binding contract between the parties, with a request for an amendment by the insertion of the release clauses in the deed of trust being merely a request for an additional provision for the convenience of the buyer, if approved by the seller, the buyer's acceptance of the signed contract not being dependent thereon.

"An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms." Restatement, Contracts § 62.

In Foster v. West Pub. Co., 77 Okl. 114, 186 P. 1083, 1084, the court said: "In the case of Bleecker v. Miller et al., 40 Okl. 374, 138 Pac. 809, the acceptance was held to be absolute and unqualified, notwithstanding the accepting party objected to certain provisions of the offer and expressed the opinion that the offerer should not ask such conditions. This objection and request was held to be no part of the contract, but a favor asked of the seller, to be granted or withheld at his option, and in no way invalidating the acceptance. In the case of Kaw City Mill & Ele. Co. v. Purcell Mill & Ele. Co., 19 Okl. 357, 91 Pac. 1022, it was said:

" 'An offer of sale of personal property and its acceptance must receive a reasonable construction, and the proposer is bound by its acceptance in that sense. Immaterial variances between the offer and its acceptance will be disregarded.' " It further quoted with approval 6 R.C.L. 609, as follows: " 'From the rule that the acceptance must be unconditional it must not be inferred that the mere mention in a letter of acceptance of matters upon which the acceptance of the proposition does not depend prevents the contract from being completed. There is authority to the effect that, though an acceptance which introduces a new term as part of the proposed contract is insufficient, the mere addition to the acceptance of a collateral or immaterial requisition not

warranted by the terms of the offer does not prevent the contract from being completed. Although a request for a change or modification of a proposed contract made before an acceptance thereof amounts to a rejection of it, a mere inquiry as to whether one proposing a contract will alter or modify its terms, made before acceptance or rejection does not amount to a rejection. * * *' "

For additional authorities see 1 Williston, Contracts § 79, and cases cited therein.

We are of the opinion that when appellant signed and returned the agreement he made an unconditional acceptance which was not made to depend upon McLeod's assent to the proposed amendment, which was simply a request for an additional benefit which was not an essential term or condition of his acceptance.

The fact that Mr. and Mrs. McLeod did not sign the original contract before forwarding the same is not material. Respondent conceded in oral argument that the signed covering letter above quoted in full was the offer. The question that arises from such situation is whether or not the seller consented to be bound by the written contract even though he did not sign it. Commercial Standard Ins. Co. v. Garrett, 10 Cir., 70 F.2d 969, 974; Reno Electrical Works v. U. S. Fidelity & Guaranty Co., 43 Nev. 191, 194, 183 P. 386, 387; Geary v. Great Atlantic & Pacific Tea Co., 366 Ill. 625, 10 N.E.2d 350; Bartlett v. Rogers, 103 Cal.App.2d 250, 229 P.2d 434, 437; 1 Corbin, Contracts § 31, at 85.

Here McLeod had the contract drawn by his own attorney and he himself mailed it to Pravorne, stating that he would sign it. The conclusion is clear that he expressed his unconditional assent thereto.

Concluding as we do that the request for amendment was merely for an additional benefit if the request should be approved and was not a rejection of the offer, the judgment must be reversed and a judgment of specific performance entered, and it is so ordered.

The appeal is also from the court's denial of Pravorne's "Motion to Set Aside Order for Summary Judgment or to Grant a New Trial." NRCP 59. Respondents argue that a motion for a new trial does not lie under the circumstances. In view of the foregoing, however, it is not necessary to discuss this subject.

Judgment reversed with costs, and remanded with instructions for entry of judgment not inconsistent with the foregoing opinion.

McNAMEE, J., and GABRIELLI, D. J., concur.

MR. JUSTICE THOMPSON being disqualified, the Governor commissioned Honorable John E. Gabrielli of the Second Judicial District to sit in his place.