JERRY HARMON MOTORS, INC., and Jerry Harmon, personally, Plaintiffs and Appellees,

v.

FIRST NATIONAL BANK & TRUST CO., Robert A. Wanago and Richard H. Rolfstad, as officers and agents of First National Bank and Trust Co., of Williston, and individually, Defendants and Appellants.

Civ. No. 880298.

Supreme Court of North Dakota.

May 17, 1989.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for plaintiffs and appellees, argued by David L. Peterson, Bismarck.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendant and appellant First Nat. Bank & Trust Co., argued by Kermit E. Bye, Fargo. Appearance by M. Daniel Vogel, Fargo.

Rolfstad, Winkjer, McKennett & Stenehjem, P.C., Williston, for defendants and appellants Robert A. Wanago and Richard H. Rolfstad, argued by Richard A. McKennett, Williston.

Keith C. Magnusson, Gen. Counsel, Bismarck, for amicus curiae North Dakota Bankers Ass'n. Submitted on brief.

ERICKSTAD, Chief Justice.

In *Jerry Harmon Motors, Inc. v. First National Bank & Trust Co.*, 436 N.W.2d 240 (N.D.1989), we remanded to the district court for designation of the trial site in the court's order changing the venue of this action from Williams County. The court has now designated the trial site in Mountrail County at Stanley, North Dakota. We affirm.

The plaintiffs, Jerry Harmon Motors, Inc. [Harmon Motors], and Jerry Harmon, sued the defendants, First National Bank and Trust Co. of Williston [First National], and Robert A. Wanago and Richard H. Rolfstad, individually and as officers and agents of First National, alleging breach of a loan commitment and conversion. The plaintiffs alleged that, as a result of the defendants' breach of the loan commitment, Harmon Motors was forced to terminate its automobile business in Williston. The defendants answered, denying the existence of the loan commitment, and First National counterclaimed, alleging libel, slander and tortious interference with its business. The action was commenced in Williams County, the individual defendants' residence and First National's principal place of business.

After extensive discovery, the plaintiffs moved for a change of venue, asserting

that they could not receive a fair and impartial trial in Williams County. The plaintiffs' attorney, David Peterson, submitted an affidavit stating that the population of Williams County is about 25,800, with most of the people living in or near Williston. Peterson's affidavit recited that Harmon Motors was a large automobile sales and service business in Williston and that First National was one of the largest banking organizations in Williams County.

Relying on the defendants' responses to interrogatories, Peterson's affidavit stated that First National Bank had the following customers in Williams County: 18,943 depositors, including checking accounts, savings accounts, certificates of deposit, trust accounts, and other forms of depository accounts plus more than 2,600 additional deposit accounts from the recently acquired Williston Basin State Bank and the Citizens State Bank in Ray, North Dakota; 5,671 individuals or business entities with loans; and 303 shareholders.

Peterson's affidavit also stated information, with attached exhibits, about pre-trial publicity in the Williams County news media, including a letter to the editor of a Williston newspaper regarding a problem with a van purchased at Harmon Motors and other articles specifically relating to this lawsuit. Peterson's affidavit also identified other "peripheral matters detrimental to the plaintiffs' credibility," including publicity about NSF check charges against Harmon which arose as a result of the dispute between the parties, a non-related case in which there was an allegation of fraud against Harmon Motors, and foreclosure actions against the plaintiffs' property. Peterson's affidavit also related that Harmon Motors had been searched by the Federal Bureau of Investigation after this action was commenced. Peterson's affidavit further stated that First National had been able to maintain a "positive" profile in the community, in part by acquiring two other failed banks in the area whereas, because of the closure of Harmon Motors, Harmon had left the Williston area and had not been able to maintain a positive profile. The plaintiffs also submitted affidavits from seven members of the Williams County community which generally expressed the affiants' opinion that the plaintiffs could not receive a fair and impartial trial in Williams County.

The plaintiffs also submitted the results of a telephone survey conducted in Williams County by the University of North Dakota's Bureau of Governmental Affairs and two affidavits by Philip Harmeson, the Executive Administrator. One affidavit outlined the methodology for the telephone survey and the other stated Harmeson's conclusion that "it would be virtually impossible at this time to seat a panel of jurors without an inherent bias against Mr. Harmon at the outset of trial proceedings in Williams County where Jerry Harmon is a litigant and the opposing litigant is the First National Bank and Trust Company of Williston." [1]

1. Harmeson's conclusion provided:

"15. Based upon all the information presented above [the responses to the telephone survey], the general population of Williams County, North Dakota over 18 years of age has a very high negative bias against Jerry Harmon and/or Jerry Harmon Motors. The potential of having a jury selected from the potential juror pool in Williams County with little or no inherent bias against him is highly unlikely. The extent of the public's recognition of Mr. Harmon (93.9%) and Jerry Harmon Motors (98.4%) coupled with the unfavorable rating lodged against Mr. Harmon (43.4%) and Jerry Harmon Motors (45.6%), much not based on first hand experience, and the likelihood that by a factor of greater than 26 times would respondents (i.e. potential jurors) believe someone more from First National Bank and Trust of Williston than someone from Jerry Harmon Motors in a lawsuit makes it abundantly clear of inherent negative biases against a Mr. Harmon.

"Respondents were more likely to repeatedly frequent First National Bank and Trust of Williston than Jerry Harmon Motors. Many more people in Williams County were likely to know someone with stock in or be an acquaintance with someone directly associated with First National Bank and Trust of Williston.

"The awareness level of a pending lawsuit between the litigants in this case (almost one in two people in Williams County [45.9%]) raises another potential concern as to whether or not the potential jurors might have a preconceived notion about the litigation.

"The above empirical evidence from each question taken alone is a potential factor that

The defendants resisted the plaintiffs' motion, contending that the telephone survey was improperly and inaccurately done and disputing the number of people living in Williams County having accounts with First National. The defendants submitted an affidavit of LeRoy Moore, Vice President in charge of operations of First National, stating that there were "no more than 7,537 people" living in Williams County who have deposits or savings accounts with First National. The defendants also submitted affidavits of thirteen residents of Williams County which generally expressed the affiants' opinion that a fair and impartial trial could be had in Williams County.

After a hearing, the court issued a memorandum opinion granting the plaintiffs' motion for change of venue:

"1. Some relevant items in HARMON vs BANK include these:

"—Approx 21,500 bank deposits/depositors. (Wms county population approx 25,000)

"—Approx 5,700 bank loans (debtor-creditor relationship)

"—Approx 300 bank stockholders

"—Number of ex-customers of Harmon Motors UNKNOWN ... but probably many in Wms county.

"—Conflicting Affidavits. From pltf's side: approx 08. From defense side: approx 19.

"2. Pretrial publicity is not inherently prejudicial. Here, it is not shown that the media reporting was either inaccurate or misleading, however, it was quite pervasive for several months. I must frankly recognize likelihood that some polarization still exists as to both sides.

"3. I am not significantly impressed with the telephone survey nor with its results. Rather, I am impressed/concerned over the great number of county residents who have/had relationships with the parties, such as bank stockholders, account holders, loan-debtors, Harmon vehicle customers, etc. This leads me to question whether the task of drawing an impartial jury here might prove extremely difficult, if indeed possible at all?

"4. Risk cuts both ways. Aside from a juror with such 'relationship' favoring one side, there may be an opposite reaction. I point out that once a juror has been identified as having a relationship with Bank or with Harmon, that juror may feel obligated to lean over backwards (against 'his' side ... in otherwise fairly evaluating evidence) merely to prove to fellow jurors his own objectivity. Implied bias perforce allows challenge for cause on all jurors so identified. I doubt we could secure a jury out of the usual panel (70). True, I could call in another 70 or more, but if still unsuccessful in getting unbiased jury it would be a waste of time and money.

"5. All things considered, I am satisfied that a sufficient showing is made to justify granting the Motion on grounds that there is reason to believe an impartial trial cannot be had unless there is a change...."

The defendants thereafter requested the court to reconsider its decision and submitted an affidavit of Moore stating that First National had the following customers in Williams County: 4,300 depositors, 1,300 borrowers, and 1,600 who are both depositors and borrowers. The court denied the defendants' request, concluding that notwithstanding any recalculation of figures in certain categories, the defendants' request did not warrant reversal of its previous decision. The defendants have appealed.

will reduce the number of potential jurors without negative preconceptions about Mr. Harmon. Each aggregate response from respondents to the survey taken alone could be justification for granting a motion to change venue. When all the responses from each question are recited as a litany and compiled in the aggregate, the clear conclusion in my opinion is that it would be virtually impossible at this time to seat a panel of jurors without an inherent bias against Mr. Harmon at the outset of trial proceedings in Williams County where Jerry Harmon is a litigant and the opposing litigant is the First National Bank and Trust Company of Williston."

The dispositive issue is whether or not the district court abused its discretion in granting the plaintiffs' motion for change of venue.

A defendant has a statutory right to have an action tried in the county of his residence, "subject to the power of the court to change the place of trial as provided by statute." Section 28–04–05, N.D.C.C. A court may change the place of trial "[w]hen there is reason to believe that an impartial trial cannot be had . . ." in the county where the action is pending. Section 28–04–07(2), N.D.C.C.

■ The burden is on the party moving for a change of venue to show that a fair and impartial trial cannot be had in the county from which the transfer is sought. E.g., Haugo v. Haaland, 349 N.W.2d 25 (N.D.1984); Marshall v. City of Beach, 294 N.W.2d 623 (N.D.1980). The fact that a number of persons in a county have a bias or prejudice against a party will not justify a change of venue against the objections of the adverse party, if, notwithstanding that bias or prejudice, a fair and impartial trial can be had in that county. Haugo v. Haaland, supra. Boeren v. McWilliams, 33 N.D. 339, 157 N.W. 117 (1916). The question of whether or not a change of venue is necessary to obtain a fair and impartial trial is a question of fact, [Haugo v. Haaland, supra; Knoepfle v. Suko, 114 N.W. 2d 54 (N.D.1962)] which "the presiding judge, having knowledge of all of the facts and circumstances of the case, is in a much better position to pass upon than is the appellate court." Knoepfle v. Suko, supra, 114 N.W.2d at 56.

It is well established that a motion for a change of venue is addressed to the sound judicial discretion of the trial court, and its decision to either grant or deny the motion will not be disturbed on appeal in the absence of an abuse of discretion. E.g., Haugo v. Haaland, supra; Marshall v. City of Beach, supra. We have defined "abuse of discretion" as an unreasonable, arbitrary, or unconscionable act. Wall v. Pennsylvania Life Ins. Co., 274 N.W.2d 208 (N.D.

1979). Although we will not disturb a trial court's order for a change of venue in the absence of an abuse of discretion, we will consider whether a reasonable and intelligent basis for the decision is shown in the supporting affidavits. Hanson v. Garwood Industries, 279 N.W.2d 647 (N.D. 1979).

The defendants contend that the plaintiffs failed to present sufficient evidence to justify granting the change of venue. The defendants argue that the alleged pre-trial publicity did not warrant a change of venue and that the district court erred in concluding that polarization resulted from the publicity.

■ The district court stated that the pre-trial publicity was not inherently prejudicial, but recognized the likelihood that "some polarization" still existed. In our view there was ample evidence presented to the district court to suggest that "some polarization" still existed. Although that publicity and polarization may not, by itself, have been sufficient to warrant a change of venue, the district court's decision was not based solely on pre-trial publicity and polarization, but on "all things considered" and our review is not limited to that single factor.

The defendants also assert that the district court erred as a matter of law in concluding that because all of First National depositors would be subject to a challenge for cause, it would be extremely difficult to select a jury in Williams County from the small number of residents remaining after exclusion of the depositors. The defendants contend that First National's depositors would not be subject to a challenge for cause because its depositors did not have a debtor/creditor relationship. The defendants also contend that the district court erred in determining the number of customers with deposits as opposed to the number of deposits.

Challenges for cause [2] in civil actions are governed by Section 28–14–06, N.D.C.C., which provides in part:

---

**2.** Rule 47, N.D.R.Civ.P., relates to the procedure for selecting a jury and generally allows each side six peremptory challenges. Rule 47(c), N.D.R.Civ.P., states:

"Challenges for cause may be taken on one or more of the following grounds:

\*    \*    \*    \*    \*    \*

"3.  Standing in the relation of guardian and ward, master and servant, debtor and creditor, employer and employee, attorney and client, or principal and agent to either party, or being a member of the family of either party, or being a partner in business with either party, or surety on any bond or obligation for either party;"

■ Although the deposit of money in a bank generally creates a debtor and creditor relationship between the depositor and bank [*e.g., Thiele v. Security State Bank of New Salem*, 396 N.W.2d 295 (N.D.1986); *Wettlaufer Mfg. Corp. v. Detroit Bank*, 324 Mich. 684, 37 N.W.2d 674 (1949); *Farmers State Bank of Fosston v. Sig Ellingson & Co.*, 218 Minn. 411, 16 N.W.2d 319 (1944); *In re Bethke's Estate*, 68 S.D. 387, 2 N.W.2d 686 (1942); *Andrew v. Union Sav. Bank & Trust Co. of Davenport*, 220 Iowa 712, 263 N.W. 495 (1935) ], we do not believe that a deposit with a bank constitutes a debtor and creditor relationship under Section 28–14–06(3), N.D.C.C., so as to require automatic disqualification of depositors from serving on a jury in an action involving that bank.  *See Community Bank and Trust, N.A. v. Keyser*, 168 W.Va. 650, 285 S.E.2d 424 (1981); *see also, Tribby v. Northwestern Bank of Great Falls*, 217 Mont. 196, 704 P.2d 409 (1985) [statute provided that challenge for cause may be taken for a debtor-creditor relationship but not when that relationship arises solely because a prospective juror is a depositor of funds with bank].

That interpretation is consistent with our decisions in which a governmental subdivision is a defendant and a party challenges potential jurors because of their status as taxpayers [*Haugo v. Haaland, supra; Marshall v. City of Beach, supra; Hanson v. Garwood Industries, supra; cf.* Section 28–14–06(5), N.D.C.C.] and particularly our statement in *Sheridan County v. Davis*, 61 N.D. 744, 240 N.W. 867, 871 (1932):

"However, though no juror might have been subject to challenge for cause [because of being a taxpayer of Sheridan County], it does not follow that the court wisely exercised its discretion in denying the application for a change of place of trial.  It is one thing to hold that a juror may not be challenged for cause on account of a very small interest which he may have as a taxpayer, but quite another thing to conclude that an entire jury of taxpayers, each of whom is interested to a small degree adversely to the defendant, gives that assurance of a fair trial to which every litigant is entitled."

*See also, Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d 494 (N.D. 1974) [blanket disqualification of GTA members as potential jurors under Section 28–14–06(5), N.D.C.C., not advisable]; *Citizens Bank of Warrensburg v. Ogden Equipment*, 541 S.W.2d 58 (Mo.Ct.App. 1976) [trial court did not abuse its discretion in allowing challenge for cause of jurors who were depositors in appellant bank].

The district court's memorandum decision carefully recited that bank loans constituted a "debtor-creditor relationship," but did not similarly designate the "deposits/depositors" as a "debtor-creditor relationship."  The district court went on to express its concern over the great number of county residents who have had "relationships with the parties, such as bank stockholders, account holders, loan-debtors, Harmon vehicle customers."  The court stated that the risk of a juror with such a relationship cut both ways, and once a juror was identified as having such a relationship, that juror may feel obligated to lean over backward to demonstrate objectivity to the other jurors.  The court determined that jurors so identified could be challenged for cause for implied bias.

"(c) *Challenges for Cause.*  If the trial judge, after the examination of any juror, is of the opinion that grounds for challenge for cause are present, the judge should excuse that juror from the trial of the case.  If the judge does not excuse the juror, any party may challenge the juror for cause as provided by law."

We do not read the trial court's decision as requiring automatic disqualification of depositors of First National as jurors merely because of that status. Rather, the court's decision subjects potential jurors to a challenge for cause if they demonstrate a bias because of their relationship as depositors with First National and not merely because of that relationship with First National. We therefore do not believe that the district court misapplied the law about challenge for cause, and we turn to the principal issue of whether the district court abused its discretion in granting a change of venue because it determined that a fair and impartial trial could not be had in Williams County.

Within the context of the abuse of discretion standard, our prior decisions have generally held that a lower court has not abused its discretion in either granting or denying a motion for change of venue made on the ground that a fair and impartial trial could not be had in the county where the action was commenced. *Haugo v. Haaland, supra,* [affirming change of venue]; *Marshall v. City of Beach, supra,* [affirming denial of change of venue]; *Basin Electric Power Co-op. v. Boschker,* 289 N.W.2d 553 (N.D.1980) [affirming denial of change of venue]; *Jamestown Plumbing & Heating Co. v. City of Jamestown,* 189 N.W.2d 656 (N.D.1971) [affirming change of venue]; *Linington v. McLean County,* 150 N.W.2d 239 (N.D.1967) [affirming change of venue]; *Knoepfle v. Suko,* 114 N.W.2d 54 (N.D.1962) [affirming denial of change of venue]; *Hovland v. Waller,* 98 N.W.2d 893 (N.D.1959) [affirming change of venue]; *Brace v. Steele County,* 78 N.D. 429, 50 N.W.2d 90 (1951) [affirming change of venue]; *Farmers' State Bank of Harvey v. Hager,* 58 N.D. 62, 225 N.W. 128 (1929) [affirming change of venue]; *Kaczor v. Swendseid,* 55 N.D. 770, 215 N.W. 271 (1927) [affirming denial of change of venue]; *Langer v. Courier News,* 48 N.D. 678, 186 N.W. 102 (1921) [affirming denial of change of venue]; *Stockwell v. Haigh,* 23 N.D. 54, 135 N.W. 764 (1912) [affirming change of venue]; *Boeren v. McWilliams, supra* [affirming denial of change of venue].

In *Hanson v. Garwood Industries,* 279 N.W.2d 647 (N.D.1979), we reversed an order granting the plaintiffs' motion for change of venue made on the ground that a fair and impartial trial could not be had in the county where the action was commenced. In that case the plaintiffs' attorney filed the *only* affidavit in support of the motion for change of venue. That affidavit stated, in part, that one of the defendants (the City of Jamestown) was a major city in Stutsman County where the action was commenced and " 'clearly an impartial trial could not be conducted by jurors who are taxpayers of Defendant city which might well have to respond in money damages to Plaintiffs.' " *Hanson, supra,* 279 N.W.2d at 648. We concluded that that single affidavit which generally stated a taxpayer interest did not state specific facts to establish a reasonable and intelligent basis for changing venue. We therefore concluded that the district court abused its discretion in granting the plaintiffs' motion for a change of venue.

■ This case is distinguishable from *Hanson.* In this case, the parties submitted conflicting affidavits to the trial court about whether a fair and impartial trial could be had in Williams County. Generally, no abuse of discretion will be presumed or inferred where conflicting affidavits are submitted on a motion for change of venue. *E.g., Haugo v. Haaland, supra; Boeren v. McWilliams, supra.* Moreover, there was also additional supporting information about pre-trial publicity, the survey by the Bureau of Governmental Affairs, and the potential jurors' relationship with the parties. Although not as detailed as we would like, the trial court's decision identified these items and concluded that "all things considered," a sufficient showing had been made to believe that a fair and impartial trial could not be had unless there was a change of venue. We believe this record includes sufficient facts in the affidavits and exhibits, when considered together, to provide a reasonable and intelligent basis for the district court's decision, and we cannot say that it

acted unreasonably, arbitrarily, or unconscionably in granting the change of venue.

■ The defendants also argue that the district court should have waited until *voir dire* to determine whether a fair and impartial jury could be selected to try the case in Williams County.

A change of venue is an extraordinary remedy, and the usual practice is for the trial court to defer ruling on a motion for change of venue until or upon the completion of *voir dire* because, if prejudice exists, it can generally be determined at that time. *Marshall v. City of Beach, supra; Basin Electric Power Co-op v. Boschker, supra.* Although the usual practice may be to wait until *voir dire,* we have held that where conflicting affidavits provide a reasonable and intelligent basis for demonstrating that a fair and impartial trial could not be had in the county where the action was commenced, a trial court has not abused its discretion in granting a motion for change of venue before *voir dire. Haugo v. Haaland, supra; see Hovland v. Waller, supra* [trial court decision based on conflicting affidavits]; *Brace v. Steele County, supra* [trial court decision based on conflicting affidavits]; *Farmers' State Bank of Harvey v. Hager, supra* [trial court decision based on conflicting affidavits]; *Stockwell v. Haigh, supra* [trial court decision based on conflicting affidavits].

In *Haugo, supra,* 349 N.W.2d at 29, we acknowledged statements from our prior decisions that whether a juror can act fairly and impartially is a proper subject of inquiry on *voir dire* examination, but we also said:

"This statement is more in the nature of a 'last ditch' approach and is appropriate and has application to a denial of a change of venue motion but has no real significance regarding an order granting a change of venue."

We are not persuaded that in granting the change of venue before *voir dire,* the trial court failed to consider factors such as convenience to the defendants and witnesses and the administration of justice. We note that in assessing convenience of witnesses under Section 28–04–07(3), N.D.C.C., the convenience of the parties is generally not considered. *American State Bank of Dickinson v. Hoffelt,* 246 N.W.2d 484 (N.D.1976); *Kiley v. Meckler,* 57 N.D. 217, 220 N.W. 926 (1928); *McConnon & Co. v. Sletten,* 55 N.D. 388, 213 N.W. 483 (1927).

In this case the trial court minimized the inconvenience to the witnesses by changing venue to a site approximately seventy miles from Williston. We must recognize that a change of venue will generally inconvenience witnesses and the defendants and should not be totally ignored; however, the primary consideration for a motion for change of venue under Section 28–04–07(2), N.D.C.C., is whether a fair and impartial trial can be had in the county where the action was commenced.

The trial court's decision reflects its paramount concern for drawing a fair and impartial jury and also recognizes that it would be a waste of time and money if an unbiased jury could not be drawn in Williams County from the usual or an additional jury panel. That concern recognizes considerations of judicial economy and the administration of justice. Although, as argued by the defendants, there may be other contrary considerations for the convenience of witnesses or the administration of justice, the district court, having knowledge of all the facts and circumstances of this case, was in a much better position than this court to pass upon these considerations and this motion and concluded that all things considered, a sufficient showing was made to justify granting the change of venue. Based on this record and our prior decisions, we cannot say that the district court abused its discretion in granting the change of venue.[3]

3. Contrary to the suggestion by the defendants and amicus curiae, we do not believe that the district court decision mandates that a large bank or corporation will not be able to be tried in its home county. That decision only requires a change of venue where a fair and impartial jury cannot be drawn in that corporation's home county and the trial court exercises its discretion in moving the trial. Neither do we believe the trial court's decision inappropriately

Accordingly, the district court order is affirmed.

VANDEWALLE and MESCHKE, JJ., and VERNON R. PEDERSON and BAKKEN, Surrogate Justices, concur.

VERNON R. PEDERSON and BAKKEN, Surrogate Justices, sitting in place of LEVINE and GIERKE, JJ., disqualified.

ignored the individual defendant's right to a trial in their home county. Instead, the trial court's decision demonstrates its concern with whether a fair and impartial trial could be had in Williams County, which is a valid ground to move a trial from an individual defendant's home county.