**STONEWOOD HOTEL CORPORATION, INC., Plaintiff and Appellee,**

v.

**DAVIS DEVELOPMENT, INC., Defendant and Appellant.**

**Civ. No. 890045.**

Supreme Court of North Dakota.

Oct. 24, 1989.

Beauclair & Cook, Bismarck, for plaintiff and appellee; argued by James L. Norris

Kelsch, Kelsch, Ruff & Austin, Mandan, for defendant and appellant; argued by Thomas D. Kelsch.

LEVINE, Justice.

Davis Development, Inc. (Davis), appeals from the judgment in an eviction action

brought by Stonewood Hotel Corporation, Inc. (Stonewood). We reverse and remand for further proceedings.

On July 18, 1988, Stonewood purchased the Stonewood Inn from Norwest Bank. At the time of the purchase, the Stonewood Inn was being operated by Davis and Seven Seas, Inc. After the purchase, Davis operated the bar in the Stonewood Inn while Davis and Stonewood negotiated the terms of a contemplated long-term lease. Barry Davis is the chief executive officer of Seven Seas, Inc., and he and his ex-wife own Davis. It is undisputed that the parties contemplated two leases—a bar lease for Davis and a restaurant lease for Seven Seas, Inc. The parties continued their negotiations until Stonewood's attorney informed Davis' attorney by letter that Stonewood was withdrawing its offer to lease the bar facilities to Davis and directed Davis to vacate the bar premises by November 30, 1988.

By summons and complaint served on December 19, 1988, Stonewood brought an action in Morton County Court to evict Davis from the premises. The Honorable Benny A. Graff, Presiding Judge of the South Central Judicial District, assigned the matter to the Honorable Burt L. Riskedahl, a judge of the Burleigh County Court. The matter was tried in the Burleigh County Courthouse on December 29 and 30, 1988. The court denied Stonewood's motion to join Seven Seas, Inc.; denied Davis' motion for dismissal based on improper venue; concluded that "[t]here existed a month-to-month tenancy at will between the parties from July 19, 1988, to November 30, 1988;" concluded that "[t]he parties in good faith negotiated for a long-term lease but the parties did not ever come to an agreement on a long term lease;" and concluded that Davis should vacate the premises by January 31, 1989. Judgment was entered accordingly and Davis has appealed, raising the following issues:

"I. WHETHER VENUE OF THIS CASE IN BURLEIGH COUNTY WAS PROPER.

"II. WHETHER SEVEN SEAS WAS AN INDISPENSABLE PARTY TO THE EVICTION ACTION.

"III. WHETHER THE PARTIES AGREED TO ALL MATERIAL TERMS OF A LONG–TERM LEASE.

"IV. WHETHER STONEWOOD IS BOUND TO THE LEASE AGREEMENT BECAUSE OF PART PERFORMANCE BY DAVIS.

"V. IF THERE IS NO LONG–TERM LEASE, WHETHER THE LEASE RELATIONSHIP WAS A MONTH–TO-MONTH LEASE, OR ONE–YEAR LEASE PURSUANT TO 47–16–05, NDCC."

### 1. Venue

Venue means the place of trial. III W. Blackstone, *Commentaries on the Laws of England* *384; 77 Am.Jur.2d *Venue* § 1, p. 832 (1975); Black's Law Dictionary 1396 (5th ed.1979). Because the real property involved is located in Morton County, § 28–04–01, N.D.C.C., required the action to be brought in Morton County, "subject to the power of the court to change the place of trial upon agreement of counsel or in other cases provided by statute."

Stonewood brought the action in Morton County but in its summons directed Davis to appear before the Morton County Court in the Burleigh County Courthouse on December 29, 1988. In its answer, Davis alleged that "[t]he proper venue for the trial of the action is the Morton County Courthouse, and the Defendant objects to any and all proceedings outside of that venue." The trial court overruled Davis' objection on the ground that "[t]he trial was only held at the Burleigh County Courthouse because no space was available in Morton County as of December 29, 1988."

Relying on § 28–04–01, N.D.C.C., Davis argued that "in absence of an agreement or Court order, Davis had an absolute right to trial in Morton County." Stonewood, on the other hand, argued that "Section 28–04–07(3), N.D.C.C., provides the court with authority to allow the trial to be held in

Bismarck since the ends of justice would be promoted."

■ Section 28-04-07(3), N.D.C.C., provides that the court may change the place of trial "[w]hen the convenience of witnesses and the ends of justice would be promoted by the change." "A motion for a change of venue is addressed to the sound judicial discretion of the trial court." *Marshall v. City of Beach*, 294 N.W.2d 623, 625 (N.D.1980). A movant for change of venue must show "that *both* the convenience of witnesses and the ends of justice would be promoted by such a change." *Id.*, at 628. Generally, the convenience of parties will not be considered. *Jerry Harmon Motors, Inc. v. First National Bank & Trust Co.*, 440 N.W.2d 704, 711 (N.D.1989); *American State Bank of Dickinson v. Hoffelt*, 246 N.W.2d 484 (N.D.1976). Courts may consider the relative speed with which a trial may be had when determining venue questions. *See, e.g., Mullen v. Mullen*, 135 Minn. 179, 160 N.W. 494 (1916); *Thomas v. Small*, 121 A.D.2d 622, 504 N.Y.S.2d 132 (1986); *Gerber v. B.C.R. Hotel Corp.*, 10 A.D.2d 956, 201 N.Y.S.2d 749 (1960); 77 Am.Jur.2d *Venue* § 65 (1975).

The instant action was an eviction action under Ch. 33-06, N.D.C.C., which is a summary proceeding to recover possession of real estate. *South Forks Shopping Center, Inc. v. Dastmalchi*, 446 N.W.2d 440 (N.D.1989); *Fireman's Fund Mortgage Corp. v. Smith*, 436 N.W.2d 246 (N.D. 1989). Section 33-06-02, N.D.C.C., provides an "expedited time period [of 3 to 15 days] . . . within which a defendant must appear and defend in an eviction action." *Flex Credit, Inc. v. Winkowitsch*, 428 N.W.2d 236, 240 (N.D.1988).

While it is a close question, we are not persuaded that the trial court abused its discretion in allowing the action to be tried in the Burleigh County Courthouse. In view of the summary nature of an eviction action and the absence of a jury trial, the ends of justice were promoted by conducting the trial within the period allotted by § 33-06-02, N.D.C.C. No courtroom was available in Morton County for the prompt resolution of the action. The Burleigh

County Courthouse was convenient for the witnesses, who were owners of the corporations or their attorneys. Under these circumstances, trial in Burleigh County was permissible and the trial court did not abuse its discretion in changing venue.

### 2. Indispensable party

■ Rule 19, N.D.R.Civ.P., provides for the joinder of persons needed for just adjudication. Rule 19(b) provides for the dismissal of actions in which a person cannot be made a party and is indispensable. Davis contends that, by not joining Seven Seas, Inc., Stonewood failed to join an indispensable party. Stonewood argues that we should not consider this issue because Davis did not raise it in the trial court.

■ Generally, failure to join a party under Rule 19 should be raised in the responsive pleading or in a timely Rule 12(b) motion, but failure to join an indispensable party may be raised "as late as the trial." 3A *Moore's Federal Practice* ¶ 19.05[2], p. 19-78 (1989). An appellate court may consider a question about joinder of an absent person even though it was not raised below. *Id.*, ¶ 19.19-1, p. 19-296.

"[I]ndependent of Rule 12(b)(7) and Rule 12(h)(2) both the trial court and the appellate court have the power and the duty to act sua sponte to protect the rights of the absent person, whether by ordering that he be added or, if this is not feasible, by dismissing the action. But a party's objection to the non-joinder of a person whose joinder is feasible will be treated as untimely if made after the pleadings are closed, since a defendant should not be allowed to postpone his objection until trial when joinder will inevitably delay resolution of the controversy."

*Id.*, ¶ 19.05[2], p. 19-81. "Upon a literal reading of Rule 19, a person cannot be an indispensable party unless he . . . 'cannot be made a party.'" *Id.*, ¶ 19.05[2], p. 19-79.

■ There is nothing in the record indicating that Seven Seas, Inc., could not have been made a party. Seven Seas, Inc., therefore, was not an indispensable party and Davis' objection, raised for the first

time on appeal, to Stonewood's failure to join Seven Seas, Inc., is untimely.

### 3. Lease

■ The trial court concluded that "[t]here existed a month-to-month tenancy at will between the parties from July 19, 1988, to November 30, 1988," and that "[t]he parties in good faith negotiated for a long-term lease but the parties did not ever come to an agreement on a long term lease." The rationale underlying the trial court's conclusions is not apparent in the court's findings of fact and conclusions of law.

■ Leases are subject to the general rules for interpreting contracts. *South Forks Shopping Center, Inc. v. Dastmalchi, supra.* "Under traditional common law, no contract was reached if the terms of the offer and the acceptance varied." *Steiner v. Mobil Oil Corp.*, 20 Cal.3d 90, 141 Cal.Rptr. 157, 569 P.2d 751, 757 (1977). However, Section 9–03–21, N.D.C.C.,[1] provides:

> "*Acceptance must be absolute.* Except as provided by section 41–02–14, an acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest and which will conclude the person accepting. A qualified acceptance is a new proposal."

Thus, under the statute, an acceptance must be absolute and unqualified or at least separable from those parts of the acceptance which are not absolute and unqualified. Thus, not every new proposal constitutes a qualified acceptance or counteroffer. An acceptance is not necessarily invalidated by proposing changes or additions. *See Restatement (Second) of Contracts* § 61 (1981) and Comment *a* thereto:

> "§ 61. Acceptance Which Requests Change of Terms
>
> "An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms.
>
> "Comment:
>
> "*a. Interpretation of acceptance.* An acceptance must be unequivocal. But the mere inclusion of words requesting a modification of the proposed terms does not prevent a purported acceptance from closing the contract unless, if fairly interpreted, the offeree's assent depends on the offeror's further acquiescence in the modification. See Uniform Commercial Code § 2–207(1)."

*See also, Pravorne v. McLeod,* 79 Nev. 341, 383 P.2d 855 (1963).

The parties' attorneys exchanged three drafts and redrafts of proposed leases during the summer of 1988. In September, Stonewood's attorney submitted to Davis' attorney proposed leases (draft 4). This was followed by an October 6, 1988, letter to Davis' attorney, stating in part:

> "It appears that the only unsettled provision with regard to the restaurant lease relates to the manner of verifying sales generated by the restaurant.... In the most recent draft of the lease agreement, I proposed that lessee provide copies of cash register receipts prepared upon closing out the restaurant's cash registers at the end of each business day.
>
> \*   \*   \*   \*   \*   \*
>
> "Please obtain lessee's signature on the lease agreement and forward it to me along with his check in the amount of $4,943.71 for rent and restroom cleaning through October. Upon receipt, I will obtain my clients' signatures on the leases and forward executed copies to you. Please be advised that if I do not receive the executed lease and rental payment within ten days of the date of this letter, I will have no alternative but to assume

---

**1.** The reference in § 9–03–21, N.D.C.C., to § 41–02–14 (U.C.C. § 2–207), N.D.C.C., does not make § 41–02–14 applicable to real estate transactions. Section 41–02–02 (U.C.C. § 2–102), N.D.C.C., provides that "[u]nless the context otherwise requires, this chapter applies to trans-actions in goods." The Uniform Commercial Code does not apply to real estate sales. *Southcenter View Condominium Owner's Ass'n v. Condominium Builders, Inc.,* 47 Wash.App. 767, 736 P.2d 1075 (1986).

that lessee is not interested in occupying the premises, in which case appropriate measures will be taken."

After a telephone conversation with Stonewood's attorney, Davis' attorney made some changes and returned leases executed by Davis (draft 5). Draft 5 was the same as draft 4 except for changes (relating to prorating rent, a change in the monthly rent payment date, substituting cash register summary sheets for cash register receipts, and deleting "or licensees," "visitors or licensees," and "or invitees" in liability provisions) discussed by the attorneys in the telephone conversation. Stonewood then withdrew its offer and directed Davis to vacate the premises. It does not appear to us that the trial court considered whether the new proposals may have constituted an acceptance not dependent on Stonewood's assent to the added terms, in accordance with *Restatement (Second) of Contracts* § 61, *supra,* and § 9–03–21, N.D.C.C.[2] We, therefore, reverse and remand for reconsideration.

### 4. Tenancy-at-will

■ Davis contends that "even if the Court were to reject all of Davis's arguments that a long-term lease exists, it would be compelled to apply Section 47–16–05 and rule that Davis has a one-year lease from July 18, 1988 to July 18, 1989." Stonewood argues that "[s]ince there is no lease, Section 47–16–05, N.D.C.C., cannot apply."

Section 47–16–05, N.D.C.C., provides:

"A lease of real property, other than lodgings, in places where there is no usage on the subject, is presumed to be for one year from its commencement, unless otherwise expressed in the lease."

Stonewood placed Davis in possession of the premises as a tenant while the parties negotiated the final terms of a contemplated long-term lease. Davis partially performed its duties.

Stonewood did not present evidence overcoming the statutory presumption of a one-year lease provided in § 47–16–05, N.D. C.C. Thus, even if on remand, the trial court determines that the parties did not agree to a long-term lease, Davis had a one-year lease under § 47–16–05, N.D.C.C., unless Stonewood presents further evidence sufficient to overcome the presumption of a one-year lease.

The judgment is reversed and the matter is remanded for further proceedings in accordance with this opinion.

ERICKSTAD, C.J., and GIERKE, J., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the majority opinion. I write separately to note my concern with the procedure by which the change of the place of trial occurred in this case. Although I agree that the court had the right to change the place of trial and may have had adequate reason for doing so in this instance, I believe the proper procedure is a motion, upon notice, to change the place of trial, not a summons which directs the defendant to appear in a place other than that prescribed by the statute. The change of place of trial is not automatic and a party to the action has the right to object to the change. See, e.g., *Jerry Harmon Motors v. First Nat. Bank,* 440 N.W.2d 704 (N.D. 1989).

Here, Davis's objections to the change of place of trial were heard but rejected by the trial court at the time set 'for trial. Although this may minimally satisfy due process I do not approve of the procedure. Because it was a trial to the court and

---

**2.** Stonewood argues that under *Cooke v. Blood Systems, Inc.,* 320 N.W.2d 124 (N.D.1982), an "acceptance cannot introduce additional terms and conditions." The fact that Stonewood placed Davis in possession of the premises as a tenant, which partially performed leasehold obligations distinguishes this case from *Cooke v. Blood Systems, Inc., supra.* In a case such as this, possession and partial performance render application of flexible tests of acceptance, such as those contemplated in *Restatement (Second) of Contracts* § 61 (1981), all the more appropriate for determining if parties have agreed to a lease even though they have not signed a lease, rather than application of the mirror-image offer-and-acceptance-rule enunciated in *Cooke, supra.*

because the change in place of trial entailed only a few miles, counsel for the plaintiff and the court may have assumed, presumptuously as it turns out, that the defendant would have no objection. Had there been any substantive effect on the ability of Davis to adequately try its case, I would reverse on that basis also. Because I do not discern that happening in this instance and because of our action in reversing for other reasons I concur in the majority opinion.

MESCHKE, Justice, concurring.

I join in parts 2, 3, and 4 of Justice Levine's opinion for the majority. I respectfully disagree that trial of an action for possession of real estate in Morton County could be summarily held in Burleigh County. Therefore, I do not join in part 1.

The majority opinion scarcely notices that a local trial for real estate has historic significance. The ancestory of this conviction in the common law traces to the Magna Charta. *See* paragraphs 18 and 19 of the Magna Charta in 13 North Dakota Century Code, p. 3. "In *local* actions, where possession of land is to be recovered, or damages for an actual trespass, or for waste, etc., affecting land, the plaintiff must lay his declaration or declare his injury to have happened in the very county and place that it really did happen; ..." III W. Blackstone, *Commentaries on the Laws of England*, § 371, *294. Deviation from that enduring tradition is not trivial.

The majority opinion does not cite or discuss *Johnson v. Johnson*, 86 N.W.2d 647 (N.D.1957), which was relied upon by Davis. In *Johnson*, the landlord sued in Pierce County District Court to enjoin a former tenant from interfering with Bottineau County farmland. This court reversed the restraining order, declaring that it was "void for want of jurisdiction on the part of the District Court of Pierce County...." 86 N.W.2d, at 651. Tracing the history of the predecessor of NDCC 28–04–01 from territorial times through revision by the Code Commission in 1943 (adding "must be brought"), this Court declared

that it was "a matter of jurisdiction rather than of venue and that unless the action is brought in the proper county the court has no jurisdiction over the subject matter." 86 N.W.2d, at 651. Thus, the locale of the trial of real estate actions has been endowed with a jurisdictional quality in North Dakota. Today's decision disregards that standing.

Of course, like all matters that come to the judicial branch of government, *Hayden v. North Dakota Workers Compensation Bureau*, 447 N.W.2d 489 (N.D.1989), the court has power to change the place of trial and disposition in a proper way and for a proper case. NDCC 28–04–01 says that venue is "subject to the power of the court to change the place of trial ... in ... cases provided by statute." But in this case, the place was neither changed in a proper way nor for a proper reason.

The place of trial was scheduled for the Burleigh County Courthouse in the summons issued by the attorney for Stonewood. Apparently, this was done arbitrarily and ex parte by Stonewood's attorney because a Burleigh County judge had been designated to handle the case while the Morton County judge was on vacation. While we recognized the summary nature of eviction proceedings in *South Forks Shopping Center, Inc. v. Dastmalchi*, 446 N.W.2d 440 (N.D.1989). (Civil No. 890018; filed 9–26–89), we have not set aside due process. A change of the place of trial must be made by a judicial order. *Jerry Harmon Motors, Inc. v. First National Bank & Trust Co.*, 440 N.W.2d 704 (N.D. 1989). A judicial order needs a notice and a hearing. *McWethy v. McWethy*, 366 N.W.2d 796 (N.D.1985). At the opening of the trial in the Burleigh County Courthouse, the trial court overruled Davis' objection to the place of trial. This fait accompli was not a proper way.

Nor was this a proper case. NDCC 28–04–07(3) authorizes a court to change the place of trial "[w]hen the convenience of witnesses and the ends of justice would be promoted by the change." Convenience of witnesses was not involved. The trial

court ruled that "no space was available in Morton County," which was evidently based on an argument by Stonewood's counsel that "this is the only place in which the hearing could take place within the [time] parameters of the statute." If space, not time, was the reason, no "ends of justice" were "promoted." When a customary courtroom is unavailable, any meeting room can be made suitable for dispensation of justice. Consecration of the facility is not a judicial prerequisite. Thus, the reason seems rather to have been the convenience of an assigned judge, who did not want to take time from his hectic schedule to go to the nearby county for a trial. The "ends" of the judge are not the same as the "ends of justice." A judge's convenience is not an acceptable reason for changing the place of trial.

In my opinion, the trial court misruled and abused judicial discretion in changing the place of trial. Since we are remanding for reconsideration for other reasons which I join in, I do not dissent. However, I would direct that proceedings on remand be held in Morton County, not in the Burleigh County Courthouse.